[Civ. No. 8741. Second Appellate District, Division Two.—December 6, 1934.]

HOWARD G. RATH, etc., Respondent, v. INDEMNITY INSURANCE COMPANY OF NORTH AMERICA (a Corporation), Appellant.

Joe Crider, Jr., and Clarence B. Runkle for Appellant.

James P. Mackel and William M. Rains for Respondent.

WILLIS, J., *pro tem.*—Judgment on findings and conclusions was entered in the court below against appellant for $2,134.26 and interest, upon a ''broker's blanket bond'' issued by appellant to respondent to indemnify him against any losses suffered through certain prescribed acts of his employees while he was engaged in the brokerage business in Los Angeles. The bond provided indemnity for loss sustained by the insured (a) through any dishonest act of any of the employees whenever committed and whether committed directly or by collusion with others, and (b) through larceny, whether common law or statutory, robbery, burglary, hold-up, theft or other fraudulent means. It further provided that ''this bond does not cover any loss directly, or indirectly from trading, actual or fictitious, whether in the name of the insured or otherwise, and whether or not within the knowledge of the insured, and notwithstanding

any act or omission on the part of any employee in connection therewith, or with any account recording the same''.

One Lee R. Crittenden was, after April 21, 1930, a customer of respondent, he having on that date signed one of respondent's regular margin cards. In respondent's employ at the times herein mentioned was one Shepard, as a margin clerk, and one Tomberlin, as messenger boy; also one James was employed as an order clerk, whose duties consisted in communicating from respondent's office to New York or other markets all orders for the purchase and sale of securities. On June 13, 1930, there was given to James an order, purporting to be signed by Crittenden and approved ''by Salesman G. M. Tomberlin'', to buy certain stock. James inquired of Shepard whether Crittenden had sufficient margin to cover such order, to which Shepard replied that the margin was ''O. K.'' James thereupon executed the order with the respondent's correspondent on the New York Exchange; and the purchase price of the stock was charged by the correspondent company against respondent's account. On June 16, 1930, a similar transaction was accomplished in the same manner and with similar result, creating a debit in the New York house against respondent in the total sum of $7,285. Both these transactions were without Crittenden's knowledge or authority, which fact was not discovered by respondent until July 8, 1930, whereupon respondent at once took possession of the stock so purchased by transferring it from the Crittenden account to his own. On that date this stock was of the value of only $5,200, a decrease of $2,175 from the purchase price, for which amount, less $40.74 of salary due Shepard or Tomberlin, which respondent retained and credited on the loss, or $2,134.26, respondent seeks to hold appellant liable under the bond in question. After trial the court found in effect that the acts of respondent's employee were wrongful, fraudulent and dishonest, that the employee had appropriated to his own use certain funds belonging to respondent on deposit with the New York correspondent and that by reason of such dishonest acts respondent had suffered damage in the sum of $2,134.26, with interest thereon. The court further found that respondent was not engaged in trading according to the general acceptance of said term in the transactions in question, and that the loss suffered was not a trading loss so

as to bring it within the exonerating clause of the bond, but that the loss was the result of the wrongful, fraudulent and dishonest act of the employee of respondent. The conclusion of the court was that the loss was the result of dishonest acts of the employee and that respondent was entitled to judgment for the amount thereof.

At the trial, over appellant's objection, the court permitted an "expert witness" to answer a hypothetical question comprising a statement of all the substance of the testimony and other evidence making up the transactions in question, and concluding with: "Have you an opinion as to whether or not loss sustained in the amount specified resulted from trading, either actual or fictitious?" To such question the witness answered: "I don't think it was a trading loss." On cross-examination he testified that trading was any purchase or sale of securities.

On this appeal it is contended that the court erred in admitting this expert testimony, that the findings as recited above are not supported by the evidence and that the conclusions of law and judgment are not warranted by the findings or evidence. In all these contentions we agree with appellant.

The court erred in overruling the objection to the admission of expert testimony as to whether the acts described constituted trading and as to whether the loss suffered therefrom was a trading loss. That was a question for the determination of the court, which under the circumstances was competent to attach to the word its ordinary and common meaning, there being no question raised as to its having any peculiar or limited meaning as employed in the text of the bond. That the loss suffered occurred in a trading transaction is obvious, in the light of the common and well-known meaning of the term "trading", when used in connection with the purchase and sale of securities.

Under the terms of the exonerating provision of the bond it is immaterial whether the loss in a trading transaction was occasioned by the dishonest act of an employee or not. The very language and its place in the contract carry conviction that the exonerating clause limited the dishonesty clause, and has the effect of relieving the surety from liability for any dishonest act of an employee committed in a trading transaction resulting in loss.

Our conclusions thus expressed are in harmony with and fully sustained by the decision in the case of *Earl* v. *Fidelity & Deposit Co.*, 138 Cal. App. 435 [32 Pac. (2d) 409], decided in May, 1934, and in which a hearing has been denied by the Supreme Court. That case is so similar in all its aspects to this that we refrained herein from extensive discussion, being satisfied to state our reasons for this decision briefly and referring to the above case as authority and for detail of discussion and conclusions on legal phases.

It follows, therefore, that the findings complained of are not supported by the evidence, and that the conclusions and the judgment are not supported by the findings or by the evidence.

The judgment is reversed.

Stephens, P. J., and Crail, J., concurred.