**Carl A. HILL and Evelyn V. Hill, Plaintiffs-Appellees,**

v.

**INTERNATIONAL HARVESTER COMPANY, Defendant-Appellant.**

No. 85–1635.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1986.

Decided Aug. 18, 1986.

Rehearing and Rehearing En Banc Denied Oct. 14, 1986.

Hugh Griffin, Lord Bissell & Brook, Chicago, Ill., for defendant-appellant.

John C. Hamilton, Parker & Jaicomo, South Bend, Ind., for plaintiffs-appellees.

Before BAUER, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The appellee, Carl A. Hill, was injured when the truck he was driving left the road and struck a culvert alongside Interstate Highway 80 in Illinois. As a result of these injuries, Mr. Hill and his wife brought this strict liability action against International Harvester Company (Harvester) alleging that the truck was defective when manufactured. After a jury trial, the Hills were awarded approximately $300,000 in compensatory damages. Harvester now contends that the evidence was insufficient to support a finding that the vehicle was defective at the time of the accident and when it left Harvester's control. Accordingly, it submits that the district court should have granted its post-trial motion for judgment notwithstanding the jury's verdict (judgment n.o.v.) or, in the alternative, for a new trial. We disagree and, accordingly, affirm the judgment of the district court.

I

Carl Hill is a truck driver who, at all times relevant to this appeal, was assigned to drive a 1979 International Harvester Transtar II truck tractor. On the night of the accident, Mr. Hill was driving east on Interstate Highway 80. He was transporting a shipment of folded paper cartons from Clinton, Iowa to Morris, Illinois. The road was straight and the night was clear and dry.

Shortly after midnight on August 16, 1980, after the truck had crossed an expansion strip in the road, Mr. Hill heard a snap in the right, front corner of the truck's cab. The truck then veered sharply to the left toward the median strip which divided the highway. Despite Mr. Hill's efforts to turn the vehicle to the right, the steering wheel apparently locked and the truck continued left onto the grassy median. It then struck a culvert, ricocheted back across the highway, and finally came to rest against a guardrail on the right side of the road.

At the time of the accident, the truck was two years old and had been driven approximately 225,000 miles. However, apart from the cause of the accident—a cause which was never specifically proven at trial—the truck was in good condition. The trial record indicates that the truck was thoroughly inspected when delivered to CRST—the firm which owned it. That inspection failed to detect any problems. The record also indicates that the truck was subjected to an extensive maintenance program. While the parties disagree over the inferences which should be drawn from this maintenance, the maintenance record is nonetheless well documented.[1]

The record further indicates that Mr. Hill had maintained a generally good driving record throughout his career.[2] However, since the present incident occurred at night and did not involve another vehicle, a question arose at trial concerning Mr. Hill's attentiveness at the time. To rebut any inference of his own error, Mr. Hill testified that he was not asleep when the accident occurred. This testimony was corroborated by Officer Bernardoni, an Illinois master trooper, who concluded that the wreck had not been caused by driver inattention.

Officer Bernardoni also testified concerning his investigation at the scene of the accident. First, he indicated that the physical condition of the road could not have caused the crash. Also, he stated that Mr. Hill acted properly by not attempting to brake the truck while it was skidding across the median. Finally, Officer Ber-

---

1. CRST has three types of maintenance reviews. Type *A* service reviews occurred at 10,000; 30,000; 50,000; 70,000; 90,000 and 110,000 mile intervals. Type *B* service reviews occurred at 20,000; 40,000; 60,000; 80,000 and 100,000 mile intervals. Finally, Type *C* service reviews occurred at 120,000 mile intervals.

2. However, approximately three weeks prior to this accident, Mr. Hill had been involved in an incident in which he rear-ended another vehicle.

nardoni testified that the physical evidence at the scene indicated that the truck's front tires were splayed when the truck entered the median: the left tire was pointing forward and the right tire was pointed either in or out. This testimony was apparently offered by the Hills to indicate that some defect existed in the truck's steering system.[3]

Harvester argued that this evidence was insufficient to support a finding that the truck was defective at the time it left Harvester's control. It therefore moved for the entry of judgment n.o.v. or, in the alternative, for a new trial. The district court denied both motions, and that decision is now before us for review.

## II

We first turn to the motion for judgment n.o.v. Since the district court's jurisdiction was based on diversity of citizenship, *see* 28 U.S.C. § 1332, we look to the state standard to determine whether the district court should have granted the motion. *Pucalik v. Holiday Inns, Inc.*, 777 F.2d 359, 361 (7th Cir.1985); *Oberman v. Dun & Bradstreet, Inc.*, 507 F.2d 349, 352 (7th Cir.1974). Under Illinois law,[4] "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors [the] movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria and Eastern Railroad Company*, 37 Ill.2d 494, 229 N.E.2d 504, 513–14 (1967). With this standard in mind, we now turn to the merits of Harvester's contention.[5]

The Supreme Court of Illinois adopted the doctrine of strict liability in *Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182, 186 (1965). In that case, the court described the elements of a strict liability claim as follows: "The plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." *Id.* at 188. Thus, to establish a claim under strict liability, a plaintiff must prove 1) that the product is defective, and 2) that the defect existed when the product left the manufacturer's hands.[6] *See Millette v. Radosta*, 84 Ill.App.3d 5, 39 Ill.Dec. 232, 404 N.E.2d 823 (1980). A few years after *Suvada*, the Illinois Supreme Court elaborated on its strict liability analysis by defining further a "defective product." In *Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill.2d 339, 247 N.E.2d 401, 403 (1969), the court identified defective products as those products "which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function." Only ten years ago, the Illinois Supreme Court synthesized these two decisions and, in *Tweedy v. Wright Ford Sales, Inc.*, 64 Ill.2d 570, 2 Ill.Dec. 282, 357 N.E.2d 449, 452 (1976), held that:

A *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed "to perform in the manner reasonably to be expected in light of [its] nature and intended function."

With this standard in mind, we consider the appellant's arguments.

Harvester contends that the Hills have failed to present sufficient evidence to sup-

---

**3.** At trial, Harvester attempted to undercut Officer Bernardoni's testimony by noting that he failed to even mention feathering in the police report which he made at the time of the accident.

**4.** The parties agree that Illinois law should be applied in this case.

**5.** Here, also, we must apply Illinois law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

**6.** It is also necessary to establish that the product caused the injury. Here, it is not contested that Mr. Hill's injury was caused by the truck.

port the jury's finding that the truck was defective. Alternatively, assuming that the truck was defective, Harvester contends that the record will not support a conclusion that the defect existed at the time the truck left its control. In support of this latter position, Harvester stresses the truck's age, mileage, and maintenance record. It urges that these factors (a truck that was two years old, was driven approximately 225,000 miles, and was exposed to periodic maintenance) require that we hold—as a matter of Illinois law—that, because so many unidentified events could have caused the accident, recovery under a strict liability theory is impossible. Moreover, Harvester suggests that a line of Appellate Court of Illinois decisions conclusively precludes a verdict for the Hills on the facts presented in this case. We now turn to each of these contentions.

As noted earlier, the Hills were required to prove that the truck was defective and that the defect existed at the time the truck left Harvester's control. With respect to the existence of a defect, the Hills were only required to prove that the truck "failed 'to perform in the manner reasonably to be expected....'" *Tweedy*, 357 N.E.2d at 452. In this case, the truck veered sharply off the road and collided with a culvert after something snapped in the truck's cab. The record also indicates that Mr. Hill was powerless to control the truck because its steering wheel apparently locked. Further, the police officer who investigated the crash gave testimony from which the jury could have inferred a synchronization problem with the truck's front tires. While this is far from conclusive proof of what specific defect caused the truck's malfunction,[7] it certainly was sufficient to establish that the truck did not "'perform in the manner reasonably to be expected.'" *Id.* The jury could reasonably conclude that, in the normal course of events, trucks do not veer sharply off the road and steering wheels do not lock.[8]

■ However, the appellees were also required to show that the truck was defective when it left Harvester's plant. *Tweedy* establishes that this burden has been met if the plaintiff negates two factors: 1) the abnormal use of the truck, and 2) the existence of reasonable secondary causes for the accident. *Id.* In our view, the Hills met both burdens. In the district court, the Hills offered evidence that the road was clear and dry and that Mr. Hill was not sleeping at the time of the accident. They also offered documentary evidence that the truck had been well-maintained. We realize that the truck's maintenance record can be used to support either party's argument.[9] Yet, taking this evidence and all of the other evidence presented at the trial, as we must, in the light most favorable to the Hills,[10] it is sufficient to negate inferences of equipment abuse and reasonable secondary causes. The district court correctly left this case in the hands of the jury.

7. In *Bejda v. SGL Industries, Inc.*, 82 Ill.2d 322, 45 Ill.Dec. 113, 412 N.E.2d 464 (1980), the Supreme Court of Illinois, while discussing the requirements for a bill of particulars, stated that a plaintiff in a strict liability action need not prove "'the specific defect which causes the product to be in an unreasonably dangerous condition....'" *Id.* at 467.

8. *See Millette v. Radosta*, 84 Ill.App.3d 5, 39 Ill.Dec. 232, 404 N.E.2d 823 (1980). In *Millette*, the car's driver "testified that the steering suddenly failed and the failure caused the accident." *Id.* at 835. The court stated that "[t]his testimony alone, if believed, established that the vehicle was defective at the time of the accident." *Id.*

9. On the one hand, the Hills can use the maintenance record to argue that the truck was not abnormally used. Also, a history of good maintenance fuels the inference that any problem with the truck must have resulted from a latent defect which was present when the truck was manufactured. On the other hand, Harvester can argue that significant maintenance raises the inference that any number of reasonable intervening events could have caused the malfunction. However, Harvester could make the same argument even if the truck had been poorly maintained; if the owner had not taken good care of the truck, that laxity could be alleged as a possible cause of the accident.

10. *See Pedrick v. Peoria and Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, 513–14 (1967).

We believe that the Supreme Court of Illinois would have reached a similar result if this case had been presented to it. In *Tweedy,* the plaintiff was injured when the brakes failed on his 1966 Ford LTD.[11] The car had been driven approximately 7,500 miles at the time of the accident and the brakes had never been inspected after the car was first delivered to the dealership. The record also indicated that the car was given a general inspection after it had been driven 6,000 miles. On March 16, 1966, the plaintiff's wife "experienced a temporary failure of the brakes when she attempted to stop at a stop sign." *Tweedy,* 357 N.E.2d at 450. Later that same day, the brakes failed again. This time, the plaintiff was injured after the car ran through an intersection and struck a tree. At trial, the plaintiff offered no expert testimony concerning the presence of a specific defect in the car's brake system. In fact, the only trial testimony concerning the brakes indicated that the master cylinder and the mechanical portions of the brake system were operating properly at the time of the accident. *Id.* at 451. Nonetheless, the plaintiff prevailed.

On appeal to the Supreme Court of Illinois, the defendant, Ford Motor Company, argued that the "plaintiff failed to prove that the automobile was defective at the time of plaintiff's injury and that the defect existed when the automobile left defendant's possession. It argue[d] that plaintiff proved only a malfunction of the brakes and that the verdict [was] predicated on 'mere conjecture and surmise.'" *Id.* The *Tweedy* court rejected this argument; it reasoned that:

> Here the evidence shows that the brakes of an automobile driven approximately 7,500 miles, inspected by [the dealer] prior to delivery, inspected again at 6,000 miles, and subjected to no abnormal use prior to the occurrence failed to function in the manner reasonably to be expected. Plaintiff was driving carefully at a reasonable rate of speed, the weather was good, the roads were dry, he knew the intersection well, and there was no evidence of any reasonable secondary cause.

*Id.* at 452.

The facts of *Tweedy* are certainly not identical to those of the present case. The possibility of secondary causes is somewhat greater here. Yet, we believe that those differences are not sufficient to justify the drastic action of refusing to allow the jury's verdict to stand. In *Dunham v. Vaughan & Bushnell Mfg. Co.,* 42 Ill.2d 339, 247 N.E.2d 401, 403 (1969), the Supreme Court of Illinois stressed that the jury should be allowed to resolve such ambiguities. In *Dunham,* the court was faced with a plaintiff who had been injured by an allegedly defective hammer. In the plaintiff's strict liability action, the court needed to determine only whether the hammer was defective. The court's analysis was as follows:

> From that evidence it would appear that a new hammer would not be expected to chip, while at some point in its life the possibility of chipping might become a reasonable expectation, and a part of the hammer's likely performance. The problems arise in the middle range, as Chief Justice Traynor has illustrated: "If an automobile part normally lasts five years, but the one in question proves defective after six months of normal use, there would be enough deviation to serve as a basis for holding the manufacturer liable for any resulting harm. What if the part lasts four of the normal five years, however, and then proves defective? For how long should a manufacturer be responsible for his product?"
>
> *The answers to these questions are properly supplied by a jury....*

*Id.* at 403 (emphasis supplied) (citation omitted).

On this record, given our obligation to follow the Illinois Supreme Court's lead on

---

11. Although the car was less than one year old, the plaintiff was the car's second owner. The car's first owner had returned it to the dealership when a rod came loose.

matters of Illinois law,[12] we cannot say that the district court erred in denying the motion for judgment n.o.v.

## III

■ Finally, we turn to the district judge's denial of Harvester's motion for a new trial. Here, a federal court sitting in diversity applies a federal standard. *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir.1983). A motion for new trial is addressed to the sound judicial discretion of the trial court and will not be disturbed on appeal unless that discretion has been clearly abused. *Bass v. Wallenstein*, 769 F.2d 1173, 1187 (7th Cir.1985). We find no abuse of discretion. The liability of Harvester was, on this record, clearly an issue for the jury. Its verdict should remain undisturbed.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

**12.** Harvester has invited our attention to many decisions of the Appellate Court of Illinois which, it submits, demonstrate a consistent "refusal to extend *Tweedy* beyond its facts" and a refusal "to apply its holding to cases much closer to *Tweedy* than the facts at bar...." Appellant's Br. at 12–13 (footnote omitted). Our obligation is clear: "[S]tate law as announced by the highest court of the State is to be followed." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). The decisions of an intermediate appellate court in the state system are often helpful in discerning the contours of a state supreme court pronouncement. However, we must remember "that the Illinois Supreme Court is the final authority" on matters of Illinois law "and that an intermediate appellate court decision is not binding evidence of state law in circumstances when it is not a good predictor of what the state's highest court would do in a similar case." *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat'l Ins. Group*, 750 F.2d 619, 624 (7th Cir.1984). *See generally West v. A.T. & T.*

*Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183 (1940); *White v. United States*, 680 F.2d 1156 (7th Cir. 1982). Nor can we follow an intermediate court decision "that is inconsistent with a state supreme court ruling." *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 272 (7th Cir.1983).

We have studied the cases cited by Harvester. We believe that these holdings are fact-specific applications of *Tweedy* which do not disturb the basic principles of *Tweedy* and *Dunham* and which are distinguishable from the facts before us. In short, they are not helpful except inasmuch as they confirm the continued vitality of *Tweedy* in Illinois. *But see Indianapolis Airport Auth. v. American Airlines*, 733 F.2d 1262, 1272 (7th Cir.1984) (federal court may follow state intermediate appellate court decision declining to follow old state supreme court decision when federal court is convinced that intermediate court has correctly determined that state supreme court would overrule its decision if it had the opportunity to do so).