## INSURANCE COMPANY OF NORTH AMERICA, Plaintiff–Counter–Defendant–Appellant,

v.

## GIBRALCO, INC., Defendant,

and

## Trustee for the Liquidation of Gibralco, Inc., Defendant–Counter–Claimant–Appellee.

No. 86–6078.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1988.

Decided May 23, 1988.

---

William P. Gemmill, Los Angeles, Cal., for plaintiff-counter-defendant-appellant.

Gregory Houle, Los Angeles, Cal., for defendant-counter-claimant-appellee.

Before CANBY and WIGGINS, Circuit Judges, and LOVELL,[*] District Judge.

CANBY, Circuit Judge:

This case involves the interpretation of an exclusionary clause limiting recovery for trading losses under an insurance policy purchased by a municipal bond brokerage firm. Insurance Company of North America ("INA") appeals the district court's judgment awarding $3,313,667.66[1] to the Trustee for the broker Gibralco, Inc.[2] INA contends that the district court misinterpreted the pertinent provisions of the Bond. We affirm.

## BACKGROUND

On November 12, 1980, INA issued a Broker's Blanket Bond to Gibralco, Inc. Among other forms of coverage, the Bond provided Gibralco with $2 million of insurance for losses sustained as a result of employee dishonesty[3] and forgery.[4] The

---

[*] Honorable Charles C. Lovell, United States District Judge, District of Montana, sitting by designation.

1. The district court awarded damages in the amount of $809,674.71 under the employee dishonesty provision of the Bond, $1,563,426.14 under the forgery provision, and $940,566.81 in prejudgment interest.

2. After the commencement of litigation, Gibralco was placed into liquidation by the Securities Investor Protection Corporation because of its failure to maintain minimum capital requirements. The real party in interest is now the Trustee appointed to supervise the liquidation of Gibralco, Inc.

3. Insuring Clause (A) of the Bond covered: "Loss through any dishonest or fraudulent act of any of the Employees, committed anywhere and whether committed directly or by collusion with others, including loss of property through any such act of any of the Employees."

4. Insuring Clause (D) of the Bond covered: "Loss through forgery ... [including] [a]ny check or draft (a) made payable to a fictitious payee and endorsed in the name of such fictitious payee or (b) procured in a face to face

Bond excluded coverage for any trading losses that Gibralco might sustain;[5] trading losses were the subject of a separate clause providing coverage limited to $100,000. Although an exception to the trading loss exclusion seemed to permit coverage of trading losses resulting from employee dishonesty,[6] the exception did not explicitly set forth the availability of coverage for such losses.[7]

Steven R. Grayson, a sales representative at Gibralco, maintained two trading accounts at the firm without the knowledge of his employer: the "S.R. Grayson" and "Michael Scott" accounts. Between 1979 and 1981, Grayson persuaded several Gibralco customers to let him exchange their municipal bonds for higher-yielding investments. Grayson subsequently sold the customer bonds through the S.R. Grayson account. Grayson used the proceeds from the sales to gamble, and to purchase a few high-yield bonds for his customers to lull them. In addition, Grayson ordered $150,000 of Rancho California water district bonds through the Michael Scott account. When Gibralco demanded that "Michael Scott" take delivery of and pay for the bonds, Grayson obtained physical possession of the Rancho California bonds, with the understanding that he would deliver them to the purchaser. Grayson did not return with either the bonds or the payment due Gibralco.

Gibralco subsequently presented INA with a claim for the losses it sustained as a result of Grayson's fraudulent activities.

INA determined that Gibralco's Grayson-related losses were not recoverable as losses for employee dishonesty, because they fell within the trading loss exclusion of the Bond. INA therefore paid Gibralco only $100,000, the limit of Gibralco's separate trading loss coverage. Soon thereafter, Gibralco was unable to maintain minimum capital requirements as a result of the customer claims against it. To avoid suspension of Gibralco's trading operations, INA agreed to settle or defend the customer claims against Gibralco up to $2 million. At that time, INA reserved its right to obtain a declaratory judgment on the applicability of the Bond's trading loss exclusion to Gibralco's claims.

In August 1982, INA filed this claim for declaratory relief in federal district court. Gibralco filed a counter-claim, seeking a declaratory judgment that its losses were covered under either the employee dishonesty or the forgery provisions of the Bond. Gibralco also asserted a claim for insurer bad faith. The district court entered judgment for Gibralco's Trustee. INA now appeals.

## DISCUSSION

### 1. *The Definition of "Trading Loss"*

The first issue on appeal is whether the district court was correct in ruling that Gibralco's Grayson-related losses were recoverable as losses from employee dishonesty up to the full $2 million value of the Bond. The district court's interpretation of

---

transaction with the maker or drawer thereof or with one acting as agent of such maker or drawer by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one impersonated."

**5.** The Bond excluded: "Any loss resulting directly or indirectly from trading, including all transactions involving the purchase, sale or exchange of securities, with or without the knowledge of the Insured, in the name of the Insured or otherwise, whether or not represented by any indebtedness or balance shown to be due the Insured on any customer's account, actual or fictitious. . . ."

**6.** The exception reads in pertinent part: "Section 1. This bond does not cover:

(e)(2) Any loss resulting directly or indirectly from trading ... *except when covered under Insuring Clause (A), (D) or (E)."* (Emphasis supplied).

**7.** The second clause of Section 1(e)(2), the applicable trading loss exclusion, provided: "If any instrument covered under Insuring Clause (D) [forgery] or (E) [securities forgery] is involved in any trading loss, then this subsection (e) shall not be construed as excluding liability under Insuring Clause (D) or (E) on account of such instrument for the amount recoverable thereunder, but in no event for an amount in excess of the amount applicable under this bond for the payment of such loss."

the Bond presents a mixed question of law and fact that we review de novo. *Hanson v. Prudential Ins. Co. of America,* 783 F.2d 762, 764 (9th Cir.1985). INA essentially argues that if Grayson engaged in trading at any point in furtherance of his schemes, the Bond's trading loss exclusion precludes coverage of Gibralco's losses. The Trustee concedes that Grayson engaged in trading, but contends that Gibralco's losses resulted not from the trades, but from Grayson's dishonesty or his forgery, both of which were covered under the Bond.

Trading losses are generally understood to be market losses sustained by firms as a result of ill-advised, unauthorized, or simply unlucky trading decisions made in the purchasing, selling, or trading of securities. In *Research Equity Fund v. Insurance Co. of N. America,* 602 F.2d 200 (9th Cir. 1979), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1344, 63 L.Ed.2d 780 (1980), for example, an investment firm sustained trading losses as a result of an employee's portfolio management decisions. *Id.* at 202. While the employee had been bribed to make unprofitable trading recommendations, the firm's losses were a direct result of the trades that the employee ordered in the ordinary course of the firm's business. Similarly, in *Bass v. American Ins. Co.,* 493 F.2d 590, 591 (9th Cir.1974), a municipal bond firm sustained trading losses when an employee made misrepresentations in selling bonds to customers, and advised his employer to invest in worthless ventures in which the employee had a personal stake. The court found that the insured's losses were not recoverable because of the trading loss exclusion of its Broker's Blanket Bond. Both cases involved classic trading losses sustained in the course of regular trading activities.[8]

In this case, Gibralco's losses were not caused by Grayson's trades, but by his dishonesty. Grayson stole both the Rancho California bearer bonds and the proceeds of the customer bonds. The fact that Grayson disguised the theft of the customer bonds as a sale does not make it any less a theft. *Research Equity,* 602 F.2d at 204. Moreover, Gibralco did not suffer losses at the time that Grayson traded the bonds. The actual losses occurred later: when Grayson wrongfully retained the sales proceeds of the customers' bonds or when the rightful owners claimed their bonds, and when Grayson stole the Rancho California bearer bonds. Indeed, Gibralco would have suffered losses as a result of Grayson's activities whether or not the stolen bonds or proceeds were ultimately traded.

█ We do not agree with INA that the trading loss exclusion precludes coverage if a trade occurs anywhere in the chain of events resulting in a loss to the insured. The broad applicability of the trading loss exclusion urged by INA would eviscerate the employee dishonesty coverage provisions of the Bond in every case where a trade might occur in the course of an employee's dishonest scheme. We have no doubt that in requiring brokers' bonds to provide coverage against losses from employee dishonesty,[9] the SEC intended such bonds to cover the kind of dishonest and fraudulent activity in which Grayson engaged. The district court correctly found INA liable under the Bond for Gibralco's Grayson-related losses.

### 2. *The Ambiguity of the Trading Loss Exclusion*

█ INA next argues that the district court incorrectly held the trading loss exclusion of the Bond to be ambiguous. At

---

**8.** *See also Rath v. Indemnity Ins. Co. of N. America,* 2 Cal.App.2d 637, 38 P.2d 435, 436 (1934) (trading loss exclusion prevented recovery of losses resulting from an employee's unauthorized approval of trades); *Earl v. Fidelity & Deposit Co.,* 138 Cal.App. 435, 32 P.2d 409, 412–413 (1934) (trading loss exclusion applicable where an employee's misrepresentations led to unauthorized and unprofitable purchases of shares by the insured). Although employee dis-

honesty and fraud were elements in both cases, each involved a classic trading loss because market losses were sustained as a direct result of trading within the usual course of the insured's business.

**9.** *See* Municipal Securities Rulemaking Board Manual, Rule G–6; National Association of Securities Dealers, Rule 32.

oral argument, INA's counsel conceded that the Bond could have been clearer, but explained that broad language was used in the Bond because the same insurance contract was used for many types of brokerage policies. While INA may well have its reasons for using a form contract, such a practice invites interpretive problems in applying unspecific or general terms to particular cases. In view of the inclusionary language found in the exception to the trading loss exclusion, *see supra* note 6, and INA's failure to provide more precise exclusionary language in the explanatory clause of that exception, *see supra* note 7, we conclude that the Bond was ambiguous with respect to losses involving both trading and employee dishonesty.

It is well established California law that any ambiguities or uncertainties in insurance contracts are construed against the insurer. *Hanson,* 783 F.2d at 764. Exclusionary clauses must also be construed narrowly against the insurer. *Continental Cas. Co. v. Richmond,* 763 F.2d 1076, 1079 (9th Cir.1985). If two or more interpretations are reasonable, we must adopt the interpretation that favors coverage. *Hanson,* 783 F.2d at 764; *Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 808, 640 P.2d 764, 768, 180 Cal.Rptr. 628, 632 (1982) (en banc). The district court correctly required INA to cover Gibralco's Grayson-related losses, given the ambiguity of the Bond's trading loss exclusion.

### 3. *Gibralco's Reasonable Expectations*

 INA further argues that the district court incorrectly considered Gibralco's expectations of coverage under the Bond. We disagree. Regardless of any ambiguity in the contract, the trial judge must receive relevant extrinsic evidence that can prove a meaning to which the language of the contract is reasonably susceptible. *Brobeck, Phleger & Harrison v. Telex Corp.,* 602 F.2d 866, 871 (9th Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). The intent of the parties and the reasonable expectations of the insured must be considered when interpreting an insurance policy. *Endo Laboratories, Inc. v. Hartford Ins. Group,* 747 F.2d 1264, 1268 (9th Cir.1984), *quoting, Reserve Ins. Co.,* 30 Cal.3d 800, 640 P.2d 764, 180 Cal. Rptr. at 633. The district court did not abuse its discretion in considering Gibralco's reasonable expectations of coverage under the Bond.

 The testimony of Mr. Gunther, the President of Gibralco, indicates that Gibralco understood its $100,000 trading loss insurance to cover any market losses sustained through the firm's trading floor activities. Gibralco purchased a limited amount of trading loss coverage because it was confident that monitoring of its trading activities would limit any market losses through unauthorized, unlucky, or ill-advised trading. Both the employee dishonesty provision, and the ambiguous exception to the trading loss exclusion, reasonably supported Gibralco's expectation that its Grayson-related losses would be covered under the Bond.

### 4. *The Cross-Examination Issue*

INA alternatively contends that even if the district court properly considered Gibralco's reasonable expectations of coverage under the Bond, INA was improperly foreclosed from cross-examining Gunther. The district court's decision to limit the scope and extent of cross examination is reviewed for an abuse of discretion. *Guillory v. Orange County,* 731 F.2d 1379, 1383 (9th Cir.1984). Our examination of the record indicates that counsel for INA did not object to the fact that Gunther testified by declaration. Nor did counsel raise the issue of cross examination in the district court. Instead, INA's counsel placed all of his evidentiary objections to Mr. Gunther's testimony on the record. Under these circumstances, the failure of the district court to order an opportunity for INA to cross-examine Gunther did not constitute an abuse of discretion.

AFFIRMED.\*\*

---

\*\* We do not reach the forgery claims under In-

suring Clause (D) of the Bond because the Trust-

---

ee has conceded that affirmance of the judgment on the employee dishonesty claims provides the maximum coverage of the Grayson-related losses.