David A. **STRAZ**, Jr., Plaintiff,

v.

**THE KANSAS BANKERS SURETY COMPANY, Defendant.**

No. 96–C–855.

United States District Court, E.D. Wisconsin.

Nov. 26, 1997.

exercise of legislative, quasi-legislative, judicial   or quasi-judicial functions.''

Michael T. Hopkins, Mequon, WI, Stanley F. Hack, Milwaukee, WI, for Plaintiff.

Scott W. Hansen, Kathleen S. Donius, Christopher Banaszak, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, WI, Ann C. Hoover, Bennet & Dillon, L.L.P., Topeka, KS, for Defendant.

CLEVERT, District Judge.

The plaintiff, David A. Straz, Jr. (Straz), filed suit against the defendant, The Kansas Bankers Surety Company (KBSC), in Milwaukee County Circuit Court on July 3, 1996, seeking $1,618,000 from KBSC under a directors and officers insurance policy. KBSC issued the policy to First Bank Southeast, N.A., and First Bank was sued by Saint Catherine's Hospital, Inc. (St.Catherine's), in Circuit Court of Kenosha County, Wisconsin, for mishandling its investments. First Bank merged with Firstar Bank which eventually settled St. Catherine's lawsuit. Thereafter, Straz indemnified Firstar for the $1.4 million it paid to settle with St. Catherine's, and Firstar assigned its claim against KBSC for coverage of the St. Catherine's lawsuit to Straz. KBSC then removed the case from the Milwaukee County Circuit Court to this court, where jurisdiction is based upon diversity under 28 U.S.C. § 1332. Straz and KBSC are now seeking summary judgment. Both motions focus on the scope of the insurance policy's trading loss exclusion.

### I. Facts

KBSC and First Bank are parties to "Directors and Officers Legal Defense and Indemnity Policy, DO 1586 WI" covering the period from November 1, 1993, to November 1, 1994. The policy provides $2 million in coverage for "wrongful acts" of First Bank or its directors or officers.

During the policy term, St. Catherine's invested funds with First Bank's trust department. Later, but still during the policy term, St. Catherine's raised complaints about

the lack of communication from First Bank regarding the handling of its investments, as well as the bank's actual investment choices. First Bank had invested St. Catherine's funds in volatile derivative securities. Ultimately, on December 27, 1994, St. Catherine's filed a four count complaint against First Bank in Kenosha County Circuit Court.

Each of the four counts in the complaint relates to the financial loss St. Catherine's suffered either directly or indirectly as a result of securities trading. Count One alleges that First Bank owed St. Catherine's a fiduciary duty because of its role as an investment advisor. It asserts that First Bank breached that duty by purchasing highly risky securities, making unauthorized securities purchases, failing to disclose the nature of its securities purchases to St. Catherine's before and after trades, and misrepresenting the nature of securities purchases. The complaint states: "[b]y reason of the Bank's breach of fiduciary duty as aforesaid, the Hospital has been damaged in that it has lost over $1,100,000 in the Sinking Fund." (St. Catherine's Complaint at ¶ 19.)

The second count of the complaint alleges that First Bank's investment decisions were negligent:

> 22. The Bank's actions in investing in highly speculative derivatives (The Pooled Mortgages) constituted a breach of its duty [to use reasonable care] and negligence because it knew or reasonably should have known that such investments were (a) unauthorized by the Hospital; (b) contrary to the Hospital's investment strategy and intent; (c) highly speculative and subject to interest rate swings.

(St. Catherine's Complaint at ¶ 22.)

Count Three charges that First Bank breached its investment contract, stating:

> The Bank breached that obligation [to exercise good faith in the use of its discretion] in one or more of the following ways:

> (a) The Bank failed to advise the Hospital that it was investing in highly speculative derivatives;

> (b) The Bank concealed said investments from the Hospital; and

> (c) The Bank misrepresented the nature of the investments after the same were discovered by the Hospital and misrepresented the "safety" of the same.

(St. Catherine's Complaint at ¶ 25.)

Finally, the complaint accuses First Bank of fraud, alleging that First Bank "purposefully and deceitfully" failed to advise St. Catherine's of the investments, concealed the investments, and misrepresented the nature of the investments. (St. Catherine's Complaint at ¶ 28.)

> 30. By reason of the Bank's misrepresentations as aforesaid, the Hospital was induced and lulled into believing that the Pooled Mortgages were safe and that the Hospital would not sustain a loss since they could be repurchased by the broker, and accordingly, the Hospital did not order a sale of the Pooled Mortgages at an early state (when it would have otherwise lost only $97,000).

(St. Catherine's Complaint at ¶ 30.)

While Straz and KBSC dispute when First Bank first became aware of St. Catherine's dissatisfaction, it is not disputed that First Bank provided KBSC with notice of this issue on September 29, 1994. Further, KBSC received a courtesy copy of the complaint prior to filing and then an authenticated copy of the actual complaint. Nevertheless, KBSC insists that it never received a formal demand to provide First Bank with a defense to St. Catherine's complaint.[1]

Regardless of whether First Bank provided KBSC with sufficient notice of St. Catherine's complaint, the insurance company argues that the damages sought by St. Catherine's are not covered by its policy. It also contends that Straz does not have standing to assert his claims. KBSC bases

---

1. While KBSC asserts in its response to Straz's proposed factual findings that First Bank did not provide proper notice of the claim and did not tender defense of the matter, KBSC does not raise these issues in any of its briefs. Moreover, on January 23, 1995, KBSC denied that it was obligated to provide a defense in this matter, and therefore it may be estopped from asserting that the claim was not properly tendered to it.

its first assertion on the following policy language:

> The Underwriter [KBSC] shall not be liable to make any payment or provide any defense in connection with any claim made against the Directors or Officers:
>
> . . .
>
> 13) for loss resulting *directly or indirectly* from trading, with or without the knowledge of the Directors or Officers, whether or not represented by any indebtedness shown to be due the Directors or Officers or the Bank on any customer's account, actual or fictitious, and notwithstanding any act or omission on the part of any employee in connection with any account relating to such trading, indebtedness, or balance;

(emphasis added.)

## II. Analysis

Under Fed.R.Civ.P. 56, summary judgment is appropriate when the pleadings, affidavits, and other materials on file with the court show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). When a rational trier of fact cannot find in favor of the nonmoving party, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

This case is particularly well suited for summary judgment because the the material facts are not in dispute. Resolution of this case can be based on the court's interpretation of the disputed insurance contract as a matter of law.

The first step in the court's analysis of this dispute must be application of the appropriate body of law.[2] In this case, the parties do not dispute that the insurance contract should be analyzed under Wisconsin law. Moreover, other than the place of business of KBSC, all of the relevant contacts are in Wisconsin. Therefore, this court will review the insurance contract under Wisconsin law.

■ In applying a state's substantive law, this court will look to cases from the state's highest court and if necessary decisions of the state's intermediate courts. *Hill v. Int'l Harvester Co.,* 798 F.2d 256, 260 n. 12 (7th Cir.1986). Where the state's courts do not offer sufficient guidance, this court may look to the state's federal courts and then courts from other jurisdictions in order to determine how the state's supreme court might rule. *Shirley v. Russell,* 69 F.3d 839, 843 (7th Cir.1995). The present case appears to raise an issue of first impression under Wisconsin law, the scope of an insurance policy exclusion of losses from securities trading.

### A. The Trading Loss Exclusion

■ KBSC argues that no matter how St. Catherine's claim arose, whether it was the result of a breach of fiduciary duty or negligence, the claim is the result of a loss from dealing in securities, and therefore it is excluded from coverage. The insurance contract states:

> The Underwriter [KBSC] shall not be liable to make any payment or provide any defense in connection with any claim made against the Directors or Officers:
>
> . . .
>
> 13) for loss resulting *directly or indirectly* from trading, with or without the knowledge of the Directors or Officers, whether

---

**2.** Under the *Erie* Doctrine, a federal court exercising diversity jurisdiction must follow the law of the state in which the action is brought. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, this court will apply Wisconsin choice of law principles to determine whether the law of Wisconsin or the law of Kansas governs the interpretation of the insurance policy. *Sybron Transition v. Sec. Ins. Co. of Hartford,* 107 F.3d 1250, 1255 (7th Cir. 1997). In contract cases, the Supreme Court of Wisconsin has endorsed the "grouping-of-con-

tacts approach" to choice of law issues as embodied in the Restatement (Second) of Conflict of Laws § 188 (1971). *See Urhammer v. Olson,* 39 Wis.2d 447, 450, 159 N.W.2d 688, 689 (Wis. 1968); *Utica Mut. Ins. Co. v. Klein & Son, Inc.,* 157 Wis.2d 552, 556–58, 460 N.W.2d 763, 765–66 (Wis.Ct.App.1990). Relevant contacts include the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the respective domiciles, places of incorporation, and places of business of the parties. *Id.*

or not represented by any indebtedness shown to be due the Directors or Officers or the Bank on any customer's account, actual or fictitious, and notwithstanding any act or omission on the part of any employee in connection with any account relating to such trading, indebtedness, or balance;

(Policy at Section IV, emphasis added.)

The scope of the trading loss exclusion at issue appears to be a matter of first impression under Wisconsin law. Hence, KBSC cites authorities from a number of other jurisdictions to support its view that Straz is not entitled to relief. *Glusband v. Fittin Cunningham & Lauzon,* 892 F.2d 208, 211–12 (2d Cir.1989); *Roth v. Maryland,* 209 F.2d 371, 374 (3d Cir.1954); *Shearson/ American Express, Inc. v. First Continental Bank & Trust Co.,* 579 F.Supp. 1305 (W.D.Mo.1984); *see also Continental Corp. v. Aetna Cas. & Surety Co.,* 892 F.2d 540 (7th Cir.1989); *but see Insurance Co. of North America v. Gibralco, Inc.,* 847 F.2d 530, 533 (9th Cir.1988). Regardless, under Wisconsin law ambiguities in insurance contracts should be construed narrowly and in favor of the insured. *Donaldson v. Urban Land Interests, Inc.,* 211 Wis.2d 224, 230, 564 N.W.2d 728, 731 (Wis. 1997).

In *Glusband,* the receiver for an insolvent brokerage firm brought suit against an insurer to recover losses under a bond insuring against dishonest or fraudulent employee conduct. However, the bond expressly excluded "trading losses." The Second Circuit Court of Appeals stated that "[t]he obvious purpose of the trading exclusion is to exempt from coverage losses caused by market forces, misjudgments of those forces by buyers and sellers of securities, or various errors or omissions—e.g., a failure to execute an order—in the course of trading." *Glusband,* 892 F.2d at 211. Therefore, even though the bond insured against employee dishonesty, the actual losses were caused by trading and were excluded from coverage. The Second Circuit observed that maintaining predictability in insurance contracts is essential to the efficient provision of insurance. *Id.* at 212.

A similar conclusion was reached by the Third Circuit in *Roth.* There, a broker sought to recover under an indemnity bond for losses sustained resulting from employee dishonesty. The bond excluded "[a]ny loss resulting directly or indirectly from trading." *Roth,* 209 F.2d at 373. The court held that the exclusion precluded recovery of trading losses even if the trades were the result of dishonest acts otherwise covered by the bond. *Id.* at 374.

In *Shearson,* another federal court came to the same conclusion. The trading loss exclusion was identical to the exclusion in this case; it stated that losses "resulting directly or indirectly from trading" were not covered. *Shearson,* 579 F.Supp. at 1308. First, the court held that the exclusion was not ambiguous. *Id.* at 1310–11. Thereafter, it concluded that the plain meaning of the exclusion was to deny coverage for losses from the buying and selling of securities, regardless of whether the trades were legal. *Id.* at 1311.

Finally, the Seventh Circuit in *Continental Corp. v. Aetna Cas. & Sur. Co.,* 892 F.2d 540 (7th Cir.1989), reexamined its earlier construction of a trading loss exclusion in light of the evolution of fidelity insurance, a subsequent decision by Wisconsin Supreme Court, and *Roth.* 892 F.2d at 545–546. In *Paddleford v. Fidelity & Casualty Co. of New York,* 100 F.2d 606 (7th Cir.1938), the court had limited the trading loss exclusion to honest trading by the insured's employees. However, in *Continental,* the Seventh Circuit adopted the Third Circuit's reasoning in *Roth,* and overruled *Paddleford. Id.* at 546.

The Ninth Circuit's seemingly contrary result in *Gibralco* is distinguishable. There, the court stated that trading losses are "generally understood to be market losses sustained by firms as a result of ill-advised, unauthorized, or simply unlucky trading decisions made in the purchasing, selling, or trading of securities." 847 F.2d at 533. However, the losses were not caused by trading, but by the dishonesty of a brokerage firm's employee. Unlike *Glusband* and *Roth,* the loss did not occur at the time of the trade, but when the employee wrongfully stole bearer bonds and sales proceeds. Thus, the court held that if the trading loss

exclusion extended to these facts, the employee dishonesty coverage would be eviscerated. *Id.*

The deciding factor in the aforementioned cases was the actual cause of the loss for which the insured was seeking recovery. Where the loss resulted from trading, even if it was unauthorized or dishonest, the trading loss exclusion was applied. *Glusband,* 892 F.2d 208; *Roth,* 209 F.2d 371; *Shearson,* 579 F.Supp. 1305. However, where the loss was due to some other act, the exclusion was rejected. *Gibralco,* 847 F.2d 530.

In this case the trading loss exclusion should apply irrespective of St. Catherine's original theory of recovery. Moreover, the policy exclusion language is clear; losses arising directly or indirectly from securities trades are excluded from coverage. Even though some of the breaches of fiduciary duty alleged by St. Catherine's took place prior to any securities trade, the ultimate loss was a result of the trading. It was the market that caused the loss, and, therefore, the loss falls within the trading loss exclusion in the insurance policy.[3]

### B. Duty to Defend

Straz argues that KBS had a duty to defend First Bank and then Firstar against St. Catherine's complaint. Straz argues further that by failing to defend, KBSC is estopped from denying coverage under the insurance policy. KBSC counters that the insurance policy was an indemnity policy and not a liability policy, and, therefore, KBSC had no duty to defend. Alternatively, KBSC argues that even if the insurance policy was a liability policy, KBSC had no duty to defend because the claims raised in St. Catherine's complaint were excluded from coverage under the policy.

Under Wisconsin law, interpretation of an insurance contract is controlled by the same laws of construction applicable to other contracts. *Kremers–Urban Co. v. American Employers Ins. Co.,* 119 Wis.2d 722, 735, 351 N.W.2d 156, 163 (Wis.1984). Hence an insurance contract should be construed to give

effect to the parties' intent. *School Dist. of Shorewood v. Wausau Ins. Cos.,* 170 Wis.2d 347, 367, 488 N.W.2d 82, 88–89 (Wis.1992). The test is not what the insurer intended, but what a reasonable person in the position of the insured would have understood the contract to mean. *Id.* Finally, if the language of the contract is reasonably susceptible of more than one interpretation, it is ambiguous, and the ambiguity is resolved in favor of the insured. *Id.*

■ Insurance contracts can generally be grouped into two distinct categories: liability contracts and indemnity contracts. *Agnew v. American Family Mut. Ins. Co.,* 150 Wis.2d 341, 348, 441 N.W.2d 222, 225–26 (Wis.1989). Liability contracts require the insurer to protect the insured from payment of a claim for which the insured is liable. *Id.* A policy will be treated as a liability policy when (1) the insurer is responsible for the loss before payment; (2) the insurer has a right to notice of the claim; (3) the insurer may control the defense of the claim; or (4) the insurer has the right to disapprove proposed settlements. In Wisconsin, such contracts impose on the insurer a duty to defend. *City of Edgerton v. General Cas. Co.,* 184 Wis.2d 750, 764–65, 517 N.W.2d 463, 470 (Wis.1994).

■ In the present case, the insurance contract is entitled "Directors and Officers Legal Defense and Indemnity Policy." Despite inclusion of the term "indemnity" in the title, the contract requires KBSC to defend against and cover claims before an obligation to pay arises. Also, it directs First Bank to (1) notify KBSC of any claims; (2) seek the approval of KBSC before incurring defense costs; and (3) obtain KBSC's approval of any settlement. These characteristics are indicative of a liability policy. Thus, this court finds that the insurance contract between First Bank and KBSC was a liability policy that imposed on KBSC to a duty to defend covered claims.

---

**3.** The Settlement Agreement entered into between Firstar and St. Catherine's also describes St. Catherine's complaint as one for "damages suffered as a consequence of First Bank's invest-ment in certain Federal Home Loan Mortgage Corporation bonds backed by pooled mortgages."

The duty to provide a defense is determined by the complaint and not extrinsic evidence. *Grube v. Daun,* 173 Wis.2d 30, 72, 496 N.W.2d 106, 122 (Wis.Ct.App.1992). If there are allegations in the complaint which, if proven, would be covered under the policy, the insurer has a duty to defend. *Id.* The nature of the claim against the insured is the sole consideration; the duty to defend may exist even though the suit is groundless, false, or fraudulent. *Kenefick v. Hitchcock,* 187 Wis.2d 218, 232, 522 N.W.2d 261, 266 (Wis.Ct.App.1994). And, any doubts about the duty to defend must be resolved in favor of the insured. *Shorewood Sch. Dist.,* 170 Wis.2d at 364, 488 N.W.2d at 87.

As previously noted, St. Catherine's complaint asserts that First Bank breached its fiduciary duty by failing to advise the hospital of its investment plans, failing to advise of the investments actually made, and failing to follow investment instructions. St. Catherine's contends that these actions directly or indirectly caused the securities losses. Hence, the complaint gives rise to a duty to defend against all allegations in the complaint. *Shorewood Sch. Dist.,* 170 Wis.2d at 366, 488 N.W.2d at 88; *Grube,* 173 Wis.2d at 73, 496 N.W.2d at 122.

Straz argues that KBSC's failure to provide a defense estops it from claiming that St. Catherine's claims are outside the scope of coverage under the policy. On the other hand, KBSC argues that it was not required to obtain a judicial determination of the insurance policy exclusions before refusing to defend against St. Catherine's complaint.

The general rule under Wisconsin law is that an insurance company's failure to honor its duty to defend results in a waiver or estoppel barring a later challenge to coverage. *Professional Office Bldgs., Inc. v. Royal Indem. Co.,* 145 Wis.2d 573, 585, 427 N.W.2d 427, 431–32 (App.1988). "The insurer who declines to defend does so at [its] peril." *Id.* (quoting *Grieb v. Citizens Cas. Co.,* 33 Wis.2d 552, 558, 148 N.W.2d 103, 106 (Wis.1967)). On the other hand, an insurer is not required to defend its insured unless it is at least "arguable" or "fairly debatable" that coverage exists under the policy. *General*

*Cas. Co. of Wisconsin v. Hills,* 209 Wis.2d 167, 176 n. 11, 561 N.W.2d 718, 722 (Wis. 1997); *Production Stamping Corp. v. Maryland Cas. Co.,* 199 Wis.2d 322, 327, 544 N.W.2d 584, 586 (Wis.Ct.App.1996); *but see Hamlin, Inc. v. Hartford Accident & Indem. Co.,* 86 F.3d 93, 94 (7th Cir.1996).

Here the question is whether it is arguable or fairly debatable that St. Catherine's fraud, negligence, breach of contract, and breach of fiduciary duty claims implicate coverage for wrongful actions under the insurance policy in light of the policy's exclusion of trading losses. And, the short answer is no. The loss ultimately realized by St. Catherine's was the alleged result of trading, regardless of whether committed fraud, or breached its fiduciary duty by failing to advise the hospital of investments under consideration. These claims were not fairly debatable. Thus, KBSC did not have a duty to defend.

### C. Standing

Finally, KBSC argues that assignment of First Bank's claim to Straz was prohibited by the policy. This position is meritless. It is well established that after an insurance loss occurs, the claim is similar to a debt or any other chose in action and may be assigned. *Max L. Bloom Co. v. U.S. Cas. Co.,* 191 Wis. 524, 535–36, 210 N.W. 689 (1926). Moreover, any construction of an insurance policy which purports to prohibit assignment of such a claim would be contrary to public policy and void. *Id.*

In this case, the loss occurred when Firstar settled St. Catherine's lawsuit. The policy's preclusion of assignment cannot apply to Firstar's assignment of its existing claim to Straz. Therefore, Straz is a proper party and has standing to bring this suit against KBSC.

### III. Conclusion

Based on the foregoing,

IT IS ORDERED that Straz's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that KBSC's Motion for Summary Judgment is

GRANTED, and the complaint is dismissed with prejudice.