HAMLIN INCORPORATED, Plaintiff–Appellee, Cross–Appellant,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, Home Insurance Company, and Home Indemnity Company, Defendants–Appellants, Cross–Appellees.

Nos. 95–3251, 95–3255 and 95–3334.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1996.

Decided June 7, 1996.

James O. Huber, Michael G. McCarty (argued), Brett H. Ludwig, Foley & Lardner, Milwaukee, WI, for Hamlin Inc.

Thomas R. Schrimpf (argued), Susan R. Tyndall, Hinshaw & Culbertson, Milwaukee, WI, for Hartford Acc. & Indem. Co.

Philip L. Bruner (argued), Bruce Jones, Faegre & Benson, Minneapolis, MN, Craig W. Nelson, Nelson, Dries & Zimmerman, Brookfield, WI, for Home Ins. Co., Home Indem. Co.

Before POSNER, Chief Judge, and RIPPLE and MANION, Circuit Judges.

POSNER, Chief Judge.

The DICKEY-john Corporation filed a suit against Hamlin Inc. for breach of contract and breach of warranty. The suit was eventually settled for $2.6 million and Hamlin turned around and brought the present suit, a diversity suit governed by Wisconsin common law, against two of its liability insurers (actually three, but two are affiliates and need not be distinguished), to recover the $2.6 million. Hamlin charges that the two insurers breached their duty to defend it against DICKEY-john's suit. The district court granted Hamlin's motion for summary judgment, awarding it the entire $2.6 million (plus interest and attorneys' fees) even though it is plain that no part of Hamlin's liability to DICKEY-john is within the scope of the insurance policies.

■ Most liability insurance policies provide that if the insured is sued and asks its insurer to defend the suit, the insurer must do so; and it must do so, the courts interpreting such policies hold, unless it is plain from the complaint that the plaintiff's claims of liability are not covered by the policy. Unless that condition is satisfied, the insurer will be deemed to have breached its duty to defend even if it should later be determined that the claims were indeed outside the coverage of the policy. Thus the duty to defend and the duty to indemnify (that is, to pay the insurance claim) are not coextensive, and the former, being triggered by arguable as distinct from actual coverage and determined by what the complaint says rather than by the actual facts underlying the claim of liability, is broader. *City of Edgerton v. General Casualty Co.*, 184 Wis.2d 750, 517 N.W.2d 463, 470 (1994); *Atlantic Mutual Ins. Co. v. Badger Medical Supply Co.*, 191 Wis.2d 229, 528 N.W.2d 486, 489 (App. 1995); *United States Fire Ins. Co. v. Good Humor Corp.*, 173 Wis.2d 804, 496 N.W.2d 730, 734 (App. 1993); *Curtis–Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994) (applying Wisconsin law).

An insurance company that refuses a tender of defense by its insured takes the risk not only that it may eventually be forced to pay the insured's legal expenses but also that it may end up having to pay for a loss that it did not insure against. If the lack of a defender causes the insured to throw in the towel in the suit against it, the insurer may find itself obligated to pay the entire resulting judgment or settlement even if it can prove lack of coverage. That is what happened in *Newhouse by Skow v. Citizens Security Mutual Ins. Co.*, 176 Wis.2d 824, 501 N.W.2d 1 (1993), and is the reason why an insurance company that wants to avoid liability for breach of the duty to defend will often seek a declaratory judgment of noncoverage, to negate any inference of arguable coverage and hence of a duty to defend, before the company has to decide whether to accept the tender of the defense.

■ The district judge inferred from *Newhouse* that an obligation to pay the entire settlement or judgment is the *automatic* consequence of a finding of a breach of the duty to defend. Dicta in *Newhouse* and other cases interpreting the Wisconsin common law of insurance-contract interpretation, such as *Grube v. Daun,* 173 Wis.2d 30, 496 N.W.2d 106, 123 (App. 1992), and our own *Carney v. Village of Darien,* 60 F.3d 1273, 1277 (7th Cir. 1995), are consistent with this harsh view. And holdings to this effect can be found in two Wisconsin cases. *United States Fire Ins. Co. v. Good Humor Corp., supra,* 496 N.W.2d at 734–39, and *Professional Office Buildings, Inc. v. Royal Indemnity Co.,* 145 Wis.2d 573, 427 N.W.2d 427, 431 (App. 1988). But there is a contrary dictum in *Grube v. Daun, supra,* 496 N.W.2d at 123, while *Production Stamping Corp. v. Maryland Casualty Co.,* 544 N.W.2d 584, 586 (Wis. App. 1996), holds that a wrongful failure to defend will not estop the insurer to plead lack of coverage unless coverage is at least "fairly debatable." Only *Newhouse* is a case from Wisconsin's highest court, moreover—

and *Newhouse* is explicit that the insured must show that he was made worse off by the breach than he would have been had the breach not occurred. 501 N.W.2d at 7. This is also the majority view, 1 Allan D. Windt, *Insurance Claims & Disputes: Representation of Insurance Companies and Insureds* § 4.37, pp. 267–68 (3d ed. 1995), and it is inconsistent with a rule of *always* forbidding the insurer that has wrongfully refused to defend the insured's case to deny coverage.

■ In the present case—a case of *multiple* insurers, to which the dicta we have referred, which assume that the insured is defending himself, *id.,* § 4.33, p. 256, do not speak—another of Hamlin's insurers, not one of the defendants, accepted the tender of the defense. This insurer did not pay the entire bill for Hamlin's defense. But neither is Hamlin some hapless individual who could not afford a good defense unless his insurer or insurers picked up the full tab. Hamlin was defended by Foley & Lardner, one of the best law firms in the United States. Had the insurance companies that are the present defendants helped pay Foley & Lardner's bills, Hamlin would have benefited to the extent that the insurer which did accept the tender of defense did not cover those bills in their entirety. But it would not have been better off to the tune of $2.6 million. That would imply that if only the defendants had contributed to the cost of the defense DICKEY-john would have been sent packing without a cent, though as far as we can tell its claims against Hamlin were entirely valid. Valid or not, Hamlin couldn't have expected to do better than with Foley & Lardner—the firm that was in fact its own choice, and not a coerced choice, that is, not a choice to which it turned only because the obstinacy of the defendants made it unable to "afford" an even better firm (if there is one).

■ To award Hamlin $2.6 million would thus be to give it a windfall, and windfall damages are punitive in nature. Insurance companies that refuse in bad faith to honor their undertakings are liable for punitive damages. *Weiss v. United Fire & Casualty Co.,* 541 N.W.2d 753, 765 (Wis. 1995); *Marsh v. Farm Bureau Mutual Ins. Co.,* 179 Wis.2d 42, 505 N.W.2d 162, 170 (App. 1993). As there is no basis for an inference of bad faith in this case, the judgment awarded by the district court is inconsistent with Wisconsin's policy on punitive damages.

■ Indeed, there never was even arguable coverage of Hamlin's liability to DICKEY-john, and the insurance companies were therefore within their rights in declining to defend Hamlin. To see this, we need to compare DICKEY-john's complaint with the terms of the insurance policies. According to the complaint, Hamlin manufactured and sold to DICKEY-john liquid crystal displays that DICKEY-john incorporated into instrument panels which it then sold to manufacturers of agricultural machinery. The manufacturers in turn sold tractors incorporating the panels to farmers. A number of the liquid crystal displays were defective, and as a result the instrument panels did not work properly. This was not discovered until the tractors containing the panels had been in use for some time. The farmers filed warranty claims against the tractor manufacturers, who in turn filed claims against DICKEY-john, resulting in warranty and repair costs that DICKEY-john sought to shift to Hamlin by means of its suit. The suit charged breach of contract and breach of express and implied warranties of merchantability. Hamlin was thus alleged to have sold defective goods, causing its buyer to incur warranty and repair costs.

Is such liability within the arguable scope of either defendant's insurance policies? Home's policy, a standard Commercial General Liability policy, covers liability for "property damage." This is defined as either "physical injury to tangible property" or "loss of use of tangible property that is not physically injured." But there is an exclusion for "your [that is, the insured's] product"—and the only physical injury *was* to Hamlin's product, the liquid crystal displays themselves. When the displays were mounted in the instrument panels manufactured by DICKEY-john, the panels would not work. But there is no hint in the complaint that the panels were somehow physically injured by containing a nonfunctioning part.

The policy also excludes liability for damage to "impaired property," that is, property that has *not* been physically injured, resulting from a "defect" in the insured's product—which is an exact description of DICKEY-john's claim. DICKEY-john claimed that the defect in Hamlin's product had impaired its own product, not by physically injuring it but by impairing its performance. The defective liquid crystal displays were like a defective clock in an automobile. The defect impairs the performance (broadly conceived) of the automobile. It does not physically injure the automobile.

There is an exclusion from the second of these exclusions ("impaired property") for the case in which the insured's property is damaged in an accident. If en route to DICKEY-john, Hamlin's liquid crystal displays had been damaged in a traffic accident and as a result had become defective, Hamlin's liability to DICKEY-john would have been covered by Home's insurance policy after all. But the complaint alleges that over a period of two years "a great number of the LCD units provided by Hamlin to DICKEY-john were defective," and this allegation is inconsistent with an inference that the defective units became defective as the result of an accident to otherwise sound units.

Complaints are not always accurate, so no one reading DICKEY-john's complaint could have been certain that Hamlin's liability would not turn out to be of a sort covered by the insurance policy. But certainty is not the test. The test is whether the complaint arguably asserts a form of liability covered by the policy. DICKEY-john's does not. Neither the district court nor the insured is able to offer a *plausible* interpretation of the complaint that would bring its allegations within the scope of the liabilities that Home insured Hamlin against.

The same is true with regard to Hartford's policy, though its wording is slightly different. There is an exclusion for "property damage to the named insured's product arising out of such products or any part of such products," and this is the equivalent of the "your product" exclusion in Home's policy. The damage to the liquid crystal displays came from a defect in the product itself and was thus squarely within the exclusion. There is also an "impaired property" exclusion: no coverage for "loss of use of tangible property which has not been physically injured or destroyed resulting from ... the failure of the named insured's products ... to meet the level of performance, quality, fitness or durability warranted ... by the named insured." This again is an exact description of the loss that gave rise to DICKEY-john's suit against Hamlin. DICKEY-john's instrument panels became unusable as a consequence of a defect, constituting a breach of warranty, in Hamlin's product.

Other issues are raised but need not be discussed. The judgment for Hamlin is reversed with instructions to enter judgment for the defendants.

REVERSED.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court. There is no plausible interpretation of the complaint that would bring its allegations within the scope of the liabilities against which Home insured Hamlin. This basis is quite adequate to support the decision of the court.