Harvey RADKE, Plaintiff-Respondent,

v.

FIREMAN'S FUND INSURANCE COMPANY, Defendant-Appellant.†

Court of Appeals

*No. 97–0044. Oral argument January 6, 1998.—Decided February 4, 1998.*

(Also reported in 577 N.W.2d 366.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs and oral argument of *Ron-*

*ald L. Piette* and *Thomas A. Piette* of Milwaukee. Oral argument was by *Thomas A. Piette*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief and oral argument of *Timothy S. Knurr* of *Schoone, Fortune, Leuck, Kelley & Pitts, S.C.* of Racine.

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J. Fireman's Fund Insurance Company appeals from a summary judgment directing it to indemnify its insured, Harvey Radke, for amounts Radke paid in the settlement of an underlying federal court action brought against Radke by Laura H. and for his attorney's fees. Fireman's Fund contests the trial court's finding that it had a duty to defend Radke in the federal action and that its failure to do so constituted a breach of its contract. We conclude that based on the allegations in the complaint, coverage under the policy is fairly debatable; therefore, Fireman's Fund had a duty to defend Radke in the federal suit and its failure to do so constitutes a breach of the contract. Consequently, Fireman's Fund is liable to Radke for his cost in defending the suit as well as any monies Radke was obligated to pay as a result of a settlement of the suit. We affirm the judgment.

This appeal arises out of a federal court action brought by Laura, a former student at Racine Park High School, against Radke, a former teacher at the school. Laura alleged that Radke violated her civil rights, intentionally inflicted emotional distress, negligently inflicted emotional distress, and committed assault and battery when he had sexual contact with her while on a summer field-studies trip sponsored by the Racine Unified School District. Radke tendered the

41

defense to his homeowner's insurer, Fireman's Fund, which denied coverage and refused to defend him. Consequently, Radke filed a third-party complaint against Fireman's Fund seeking to require Fireman's Fund to defend and indemnify Radke against any losses incurred as a result of Laura's federal action. Radke ultimately settled the federal suit and his third-party action against Fireman's Fund was dismissed.

Thereafter, Radke brought suit against Fireman's Fund in state court seeking a declaration of rights of the parties relating to issues of coverage, duty to defend, reimbursement of attorney's fees and payments to settle Laura's suit. The parties then filed opposing motions for summary judgment.[1] The Honorable Wayne J. Marik held that Fireman's Fund had a duty to defend Radke in Laura's federal suit and that it had breached its duty when it refused to do so. Judge Marik further concluded that because Fireman's Fund had failed to defend Radke, it also waived its right to raise any of its coverage defenses. Judgment was entered against Fireman's Fund in the amount of $36,794.60, which included Radke's $35,000 contribution to the settlement of Laura's suit and attorney's fees in the state court action. Fireman's Fund appeals.

We review a motion for summary judgment using the same methodology as the trial court. *See M & I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995). Summary judgment is appropriate in cases in

---

[1] Radke moved for partial summary judgment on the reimbursement of attorney's fees. The Honorable Emily S. Mueller granted Radke's motion awarding him $13,336.20 for attorney's fees and disbursements incurred in defending against Laura's suit.

which there is no genuine issue of material fact and the moving party has established entitlement to judgment as a matter of law. *See Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984). Because no material facts are in dispute in this case, we consider whether Fireman's Fund had a duty to defend Radke against Laura's federal suit. This presents a question of law which we review de novo. *See Kenefick v. Hitchcock*, 187 Wis. 2d 218, 231, 522 N.W.2d 261, 266 (Ct. App. 1994).

Fireman's Fund contends that even if it had a duty to defend Radke, it is still entitled to raise its coverage defenses. As we understand the insurer's argument, both in its briefs and at oral argument, an insurer is justified in refusing to defend an insured as long as it believes, after reading the four corners of the complaint against its insured, that coverage is fairly debatable. Then, if it is ultimately determined that the policy affords no coverage, there is no breach of its duty to defend.

But that is clearly not the law in Wisconsin. When determining whether an insurer has a duty to defend, the allegations within the four corners of the complaint must be compared with the terms of the insurance policy. *See Newhouse v. Citizens Sec. Mut. Ins. Co.*, 176 Wis. 2d 824, 835, 501 N.W.2d 1, 5 (1993). The existence of the duty to defend depends solely upon the nature of the claim being asserted against the insured and has nothing to do with the merits of the claim. *See Kenefick*, 187 Wis. 2d at 232, 522 N.W.2d at 266. If there are allegations in the complaint which, if proven, would be covered by the policy, the insurer has a duty to defend. *Grube v. Daun*, 173 Wis. 2d 30, 72, 496 N.W.2d 106, 122 (Ct. App. 1992). Policy exclusions are to be narrowly

construed against the insurer and any ambiguity regarding coverage is to be resolved in favor of the insured. *See Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 598 (1990).

The duty to defend is broader than the separate duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage. *See Newhouse*, 176 Wis. 2d at 834–35, 501 N.W.2d at 5. Although an insurance company that "declines to defend does so at [its] peril," it is not liable to its insured unless there is, in fact, coverage under the policy or coverage is determined to be fairly "debatable." *Production Stamping Corp. v. Maryland Cas. Co.*, 199 Wis. 2d 322, 327, 544 N.W.2d 584, 586 (Ct. App. 1996) (quoted sources omitted).

It is uncontested that Laura's complaint alleged that Radke negligently inflicted emotional distress through his sexual contact with her. Fireman's Fund looked to its policy terms, which expressly excluded coverage for liability resulting from the insured's intentional acts. However, our inquiry at this stage is limited; we are required to ignore "both the merits of the claim and any exclusionary or limiting terms and conditions of the policies." *Kenefick*, 187 Wis. 2d at 232, 522 N.W.2d at 266. Based on the allegations of Radke's negligent infliction of emotional distress in Laura's complaint, we cannot say that Fireman's Fund had no duty to defend the action at least up to the point at which its policy defenses to coverage were resolved. Because it was "fairly debatable" whether, in light of the facts alleged in the complaint, coverage existed despite the intentional acts exclusion, we affirm.

This appeal might not have been necessary if Fireman's Fund had sought earlier judicial resolution of coverage as outlined in the *Grube* line of cases. Courts

have outlined procedures that insurers can use to raise the coverage issue and still retain their right to challenge coverage: (1) the insurer and the insured can enter into a nonwaiver agreement in which the insurer would agree to defend, and the insured would acknowledge the right of the insurer to contest coverage; (2) the insurer can request a bifurcated trial or a declaratory judgment so that the coverage issue can be resolved before the liability and damage issues; or (3) the insurer can file a reservation of rights which allows the insured to pursue his or her own defense not subject to the insurer's control, but the insurer agrees to pay for the legal fees incurred. *See Grube*, 173 Wis. 2d at 75, 496 N.W.2d at 123. A more risky version of the third alternative is for the insurer to not file a reservation of rights, but to simply reject the tender of defense and allow the insured to pursue his or her own defense. *See Production Stamping*, 199 Wis. 2d at 331 n.4, 544 N.W.2d at 588.

■ The supreme court has held that "the proper procedure for an insurance company to follow when coverage is disputed is to request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved." *Newhouse*, 176 Wis. 2d at 836, 501 N.W.2d at 6. "When this procedure is followed, the insurance company runs no risk of breaching its duty to defend." *Id.* But when the case proceeds without a prior determination of coverage, "the insurer who declines to defend does so at [its] peril." *Grieb v. Citizens Cas. Co.*, 33 Wis. 2d 552, 558, 148 N.W.2d 103, 106 (1967). Where an insurer improperly refuses to defend, it will be held to have waived any subsequent right to litigate coverage. *See*

*Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 585, 427 N.W.2d 427, 431 (Ct. App. 1988).

We find no support in *Hamlin, Inc. v. Hartford Accident & Indem. Co.*, 86 F.3d 93 (7th Cir. 1996), for Fireman's Fund's contention that even if it had a duty to defend Radke, it is still entitled to raise its coverage defenses. In *Hamlin*, DICKEY-john Corporation filed suit against Hamlin, Inc. for breach of contract and breach of warranty involving liquid crystal displays that Hamlin manufactured and sold to DICKEY-john. *See id.* at 95. Hamlin had multiple insurers, and all but one rejected its tender of defense. *See id.* The suit was later settled and Hamlin sought compensation from the remaining liability insurers alleging a breach of their duty to defend. *See id.* at 94. The district court granted Hamlin's motion for summary judgment awarding it $2.6 million, the entire settlement amount. *See id.* The appellate court reversed the judgment.

The *Hamlin* court correctly noted that:

> An insurance company that refuses a tender of defense by its insured takes the risk not only that it may eventually be forced to pay the insured's legal expenses but also that it may end up having to pay for a loss that it did not insure against. If the lack of a defender causes the insured to throw in the towel in the suit against it, the insurer may find itself obligated to pay the entire resulting judgment or settlement even if it can prove lack of coverage. That is ... why an insurance company that wants to avoid liability for breach of the duty to defend will often seek a declaratory judgment of noncoverage, to negate any inference of arguable coverage and hence of a duty to defend, before the company has to decide whether to accept the tender of the defense.

46

*Id.* (citation omitted). The court further recognized that Wisconsin case law has taken the "harsh view" that "an obligation to pay the entire settlement or judgment is the *automatic* consequence of a finding of a breach of the duty to defend" as long as coverage is not "fairly debatable." *Id.*

The court articulated the test as "whether the complaint arguably asserts a form of liability covered by the policy" and concluded that DICKEY-john's did not. *See id.* at 96. Because "there never was even arguable coverage of Hamlin's liability to DICKEY-john," the court concluded that "the insurance companies were therefore within their rights in declining to defend Hamlin." *Id.* at 95.

■

Such is not the case here. Laura's complaint alleged both intentional and negligent infliction of emotional distress. Fireman's Fund's policy provides coverage for a suit brought against an insured for damages because of "bodily injury." "Bodily injury" embodies bodily harm and sickness, including required care. Liability coverage does not apply to bodily injury which is expected or intended by the insured. Although the intentional infliction of emotional distress may fall under this exclusion, it is arguable that the claim of negligent infliction of emotional distress does not. If coverage is fairly debatable, the insurer is estopped from arguing coverage defenses. Accordingly, Fireman's Fund had a duty to defend. *See United States Fire Ins. Co. v. Good Humor Corp.*, 173 Wis. 2d 804, 818–19, 496 N.W.2d 730, 734 (Ct. App. 1993).

Fireman's Fund argues that as in *Hamlin*, Radke was represented by competent counsel of his choosing and the claim was settled. Fireman's Fund continues, "[t]here is no indication that Radke's share of the set-

tlement amount would have been any less had Fireman's Fund been paying . . . legal fees for defending Radke." Thus, Fireman's Fund maintains that the settlement does not constitute damages naturally flowing from a breach of its duty to defend Radke.

Fireman's Fund's reliance on the discussion in *Hamlin* relating to competent representation is misplaced. In the process of validating the insurer's action, the *Hamlin* court attempted to distinguish Hamlin's situation from prior Wisconsin cases, like *Newhouse*, where the insured was responsible for defending himself. *See Hamlin,* 86 F.3d at 95. The key difference to the *Hamlin* court was that *Hamlin* involved multiple insurers, one which accepted the tender of defense and paid for a portion of Hamlin's legal defense bill. *See id.* The court concluded that even though Hamlin may have benefited if its additional insurers, those who rejected the tender of defense, had assisted in the payment of Hamlin's defense bills, it would not have equaled $2.6 million dollars worth of assistance. *See id.*

Wisconsin law is clear. When an insurer wrongfully refuses to defend on the grounds that a claim against its insured is not within the coverage of the policy, the insurer cannot later contest coverage, but is liable to the insured. *See Grube,* 173 Wis. 2d at 74–75, 496 N.W.2d at 123; *Production Stamping,* 199 Wis. 2d at 331 n.4, 544 N.W.2d at 588. A breach of the duty to defend constitutes "a breach of contract which renders it liable to the insured for all damages that naturally flow from the breach." *Newhouse,* 176 Wis. 2d at 837, 501 N.W.2d at 6.

> Damages which naturally flow from an insurer's breach of its duty to defend include: (1) the amount of the . . . settlement against the insured plus inter-

48

est; (2) costs and attorney fees incurred by the insured in defending the suit; and (3) any additional costs that the insured can show naturally resulted from the breach.

*Id.* at 838, 501 N.W.2d at 6. The insured is to be put in the same position he or she would have been in had the insurance company fulfilled the insurance contract. *See id.* at 838, 501 N.W.2d at 7. "Policy limits do not restrict the damages recoverable by an insured for a breach of the contract by the insurer." *Id.*

■

Because Fireman's Fund breached its duty to defend, it may not now challenge or otherwise litigate the coverage issues. *See Professional Office Bldgs.*, 145 Wis. 2d at 586, 427 N.W.2d at 432. We conclude that Fireman's Fund is liable to Radke for the costs of defending the suit, the amount recovered from Radke by settlement and any additional damages caused by Fireman's Fund's breach of its contract. *See Grube,* 173 Wis. 2d at 74–75, 496 N.W.2d at 123; *Newhouse,* 176 Wis. 2d at 837–38, 501 N.W.2d at 6.

*By the Court.*—Judgment affirmed.