ANN WALSH BRADLEY, J.
¶ 1. Petitioner, Millers First Insurance Company ("Millers First"), seeks review of a published decision of the court of appeals that reversed the circuit court's order for summary judgment.[1] The circuit court determined that Millers First no longer had a continuing duty to defend Me-nard after the plaintiff, Kenneth Burgraff ("Burgraff'), reached a settlement with Millers First for its proportionate share of the plaintiffs claim. In reversing, the court of appeals concluded that Millers First had a continuing duty to defend and that it breached the duty when it withdrew its defense of Menard following the Burgraff settlement.
¶ 2. Millers First argues that its "limits of liability for this coverage" were exhausted when it settled with Burgraff for $40,000 because that amount represented its maximum proportional liability for Bur-graff s claim. Once it satisfied its proportionate share of Burgraff s claim, Millers First contends it had no further duty to defend Menard even though it had not paid its full $100,000 limit of liability.
¶ 3. We conclude, under the terms of the policy, Millers First was required to provide a defense for Menard until it paid its $100,000 limit of liability. Like the court of appeals, we determine that Millers *57 First breached its duty to defend when it withdrew its defense of Menard following the settlement with Burgraff.
¶ 4. Cross-petitioner, Menard, Inc., seeks review of that part of the court of appeals opinion that affirmed a judgment of the circuit court determining that Menard's $500,000 self-insured retention qualified as "other applicable liability insurance" under the Millers First policy's "other insurance" clause. The court of appeals concluded that Menard's self-insured retention was "other insurance" pursuant to this court's decision in Hillegass v. Landwehr, 176 Wis. 2d 76, 499 N.W.2d 652 (1993).
¶ 5. Menard argues that its self-insured retention does not constitute "other insurance" under the Millers First policy's "other applicable liability insurance" clause. It contends that because it is a permissive user of Burgraffs vehicle, this case involves a dispute between a self-insured party and its own insurer and is governed by Brown County v. OHIC Ins. Co., 2007 WI App 46, 300 Wis. 2d 547, 730 N.W.2d 446.¶ 5 We agree with the court of appeals that Hillegass, and not Brown County, controls the outcome of this case. Like the court of appeals, we determine that Menard's self-insured retention is "other applicable liability insurance" under the Millers First policy's "other insurance clause."
¶ 6. Accordingly, we affirm the Court of Appeals and remand to the circuit court for a determination of damages.
I — I
¶ 7. The relevant facts of this case are not m dispute. Kenneth Burgraff was injured when a Menard *58 employee loaded materials onto Burgraff s trailer using a forklift. Burgraff sued Menard for damages.
¶ 8. Burgraff s vehicle and trailer were insured under an automobile insurance policy issued by Millers First. The declaration page provides for a $100,000 per person bodily injury liability limit. Its insuring agreement states:
We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.
f 9. The insuring agreement also addresses Millers First's duty to defend:
In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We are not obligated to provide defense after we have paid our limits of liability in settlement of claims or suits. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.
¶ 10. Further, the Millers First policy contains the following "other insurance" clause:
If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.
¶ 11. Menard contended that it was entitled to coverage under the Millers First policy as a permissive *59 user of Burgraffs vehicle and tendered defense of Burgraffs claim to Millers First. See Blasing v. Zurich Am. Ins. Co., 2014 WI 73, 356 Wis. 2d 63, 850 N.W.2d 138. Millers First agreed to defend Menard subject to a reservation of rights, but later conceded that it had a duty to defend, agreeing that Menard was entitled to coverage under Burgraffs automobile policy.
¶ 12. Menard was also insured for excess coverage under a commercial general liability policy issued by CNA. The excess policy had a liability limit of $500,000. CNA's policy contained an "other insurance" clause that provides:
4. Other Insurance
If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
b. Excess Insurance
(1) This insurance is excess over:
(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:
(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft .. .
(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
(a) The total amount that such other insurance would pay for the loss in the absence of this insurance; and
*60 (b) The total of all deductible and self-insured amounts under all that other insurance.
c. Method of Sharing
If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.
¶ 13. CNA's policy also includes a self-insured retention endorsement as follows:
In consideration of the premium charged, it is agreed that the limits of insurance for [] the coverages provided by this policy. . . will apply excess of a self-insured retention (hereinafter referred to as the Retention Amount)!.]
f 14. The "retention amount" is $500,000 per occurrence. Under the self-insured retention endorsement, Menard is required to pay the first $500,000 worth of damages and defense costs arising from an occurrence.
f 15. Millers First moved for partial summary judgment on the grounds that Menard's $500,000 self-insured retention qualified as "other applicable liability insurance" under the Millers First policy's "other insurance" clause. It asked the circuit court to declare that under the "other insurance" clause, Mill *61 ers First's share of any verdict or settlement would be one-sixth of the total $600,000 liability limits of the two policies combined.[2] This amount represents the Millers First policy's $100,000 limit of liability added to Menard's $500,000 self-insured retention amount. The circuit court granted Millers First's motion.
¶ 16. During mediation, Millers First settled Burgraffs claim for $40,000. The settlement agreement between Burgraff and Millers First agreed to "fully discharge Miller First Insurance Company and one-sixth of any liability that Menard, Inc. may have to [] Burgraff." Menard did not settle with Burgraff at mediation.
¶ 17. Subsequently, Millers First moved for summary judgment on the grounds that it no longer had a duty to defend Menard because it had fully satisfied its duty to pay one-sixth of any verdict or settlement. Again, the circuit court granted Millers First's motion.
¶ 18. Menard moved to bifurcate and stay the trial on the merits of Burgraffs claim pending resolution of the coverage issues on appeal. Millers First took no position on Menard's motion to bifurcate and stay. The circuit court denied Menard's motion and the case proceeded to trial.[3]
f 19. On appeal, Menard argued: (1) its self-insured retention was not "other insurance," and (2) Millers First had a continuing duty to defend *62 Menard because Millers First settled with the plaintiff for less than its $100,000 limit of liability. The court of appeals affirmed the circuit court's determination that Menard's self-insured retention was "other insurance" and reversed the circuit court's determination that Menard no longer had a duty to defend. Burgraff v. Menard, Inc., 2014 WI App 85, ¶¶ 2-3, 356 Wis. 2d 282, 853 N.W.2d 574.
rH
¶ 20. In this case we are asked to review the circuit court's grant of summary judgment. We review grants of summary judgment independently, applying the same methodology employed by the circuit court. Belding v. Demoulin, 2014 WI 8, ¶ 13, 352 Wis. 2d 359, 843 N.W.2d 373. Summary judgment is appropriate if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Wis. Stat. § 802.08(2) (2013-2014).[4]
f 21. Here there is no genuine issue of material fact. Therefore, we focus on the terms of the parties' insurance policies, which are contracts for insurance. Construction of an insurance policy presents a question of law, which we review independently of the determinations rendered by the circuit court and the court of appeals. Folkman v. Quamme, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857.
f 22. This court follows the well-established rules of insurance contract interpretation. Insurance *63 policies are interpreted as they would be by a reasonable person in the position of the insured. State Farm Mut. Auto. Ins. Co. v. Gillette, 2002 WI 31, ¶ 28, 251 Wis. 2d 561, 641 N.W.2d 662. " [B]ecause the insurer is in a position to write its insurance contracts with the exact language it chooses — so long as the language conforms to statutory and administrative law— ambiguity in that language is construed in favor of an insured seeking coverage." Froedtert Mem'l Lutheran Hosp. v. Nat'l States Ins., 2009 WI 33, ¶ 43, 317 Wis. 2d 54, 765 N.W.2d 251; see also First Am. Title Ins. Co. v. Dahlmann, 2006 WI 65, ¶ 41, 291 Wis. 2d 156, 715 N.W.2d 609.
I — ( I — 1 I — I
¶ 23. We address first the argument raised by Menard's cross-petition because it is foundational to our subsequent discussion. Menard contends that the court of appeals erred when it determined that Me-nard's self-insured retention qualifies as "other applicable liability insurance" under the Millers First policy's "other insurance" clause.
¶ 24. A self-insured retention obligates the insured to pay the first level of loss before excess insurance coverage is applied to the claim. Menard's CNA insurance policy consisted of a self-insured retention of $500,000, with an additional $500,000 in excess coverage provided by CNA.
¶ 25. If Menard's self-insured retention is not "other applicable liability insurance," then it would be treated as excess coverage — not primary coverage. Thus, Menard asserts that Millers First's $100,000 *64 limit of liability would have to be exhausted before Menard had any responsibility to pay Burgraff s claim.
¶ 26. As is the case here, an insured may have more than one insurance policy that provides coverage for the same risk. Coverage is either primary or excess. Primary insurance coverage provides "first-dollar" coverage up to the policy's limit of liability. See Arnold P. Anderson, Wisconsin Insurance Law § 11.12 (7th Ed. 2015). Excess insurance coverage attaches only after a predetermined amount of primary insurance coverage has been exhausted. Id. at § 11.14.
¶ 27. "Whenever two policies apply to the same insured at the same time, the issue of which policy must pay first — or which is primary and which is excess — is dealt with by 'other insurance' clauses." Id. at § 11.3. Wis. Stat. § 631.43(1) governs other insurance provisions:
When 2 or more policies promise to indemnify an insured against the same loss .... The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided.
Millers First's other insurance clause states: "If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits."
¶ 28. The circuit court determined that Menard's self-insured retention was "other applicable liability insurance" under the terms of the Millers First "other insurance" clause. In applying the terms of the Millers *65 First "other insurance" clause, the circuit court divided responsibility for paying any settlement or verdict between Millers First and Menard in proportion to their limits of liability.[5] Its interpretation was impelled by this court's determination in Hillegass when we concluded that self-insurance constitutes "other collectible insurance." 176 Wis. 2d at 85.
¶ 29. The plaintiff in Hillegass was injured in a motor vehicle collision involving a vehicle owned by Burlington Air Express. Id. at 78. Burlington was self-insured at the time of the collision for up to $1 million with an additional $2 million umbrella policy. Id.
¶ 30. The defendant driver had his own insurance policy with Farmers Insurance Exchange that contained an "other insurance" clause. Id. Farmer's policy provided that it was "excess over any other collectible insurance." Id. Burlington asserted on summary judgment that because it was self-insured there was no "other collectible insurance" within the meaning of the Farmers' policy and therefore Farmers, not Burlington, was the primary insurer. Id. at 78-79.
¶ 31. The Hillegass court concluded that "self-insurance constitutes 'other collectible insurance'," explaining that self-insurers retain their own risk in exchange for not paying premiums:
Whereas contractual insurance policies involve a third-party insurer underwriting the insured's risk in *66 exchange for premium payments, self-insurers retain their own risk in exchange for not paying premiums. The parties implicated in the risk-shifting may change depending on the particular arrangement, but the essence of the transaction remains the same: exchanging future liability for premium payments.
Id. at 81-82. It emphasized "the fact that the legislature permits companies to formulate the most efficient insurance coverage should not be misconstrued as a device to avoid liability by the self-retention of risk." Id. at 83.
¶ 32. We agree that Menard's responsibility under its self-insured retention ought to be analyzed in terms of how it shifted risk in exchange for premium payments. Menard, like Burlington Air in Hillegass, chose to retain its own risk for the first $500,000 of liability coverage. In doing so, Menard avoided paying premiums to a third-party insurer for that coverage. Menard gained the benefit of lower premiums with the risk of the self-insured retention. In addition, Me-nard's CNA insurance policy explicitly states that its excess coverage with CNA attaches only after Me-nard's self-insured retention has been exhausted. Thus, Menard understood that it had an obligation as a primary insurer up to the limits of its $500,000 self-insured retention.
¶ 33. Menard argues that Brown County, not Hillegass, controls the outcome because the dispute between Menard and Millers First is between an insured and its own insurer. It contends that because it is a permissive user of Burgraff s vehicle under Biasing, Menard has the same rights under the Millers First policy as if it were the named insured. See Biasing, 356 Wis. 2d 63, ¶¶ 41, 52. Menard's argument is based on this Court's statement in Biasing *67 that "[o]ur case law makes no distinction between injured parties who are named insured and other insureds." Id,., ¶ 74.
¶ 34. We disagree with Menard that Brown County controls the outcome of this case. In Brown County, the County was sued when a patient died at a county facility. 300 Wis. 2d 547, ¶ 1. The County's liability was covered by two insurance policies. Id. Both policies provided primary coverage, but one policy required the County to pay the first $100,000 as a "self-insured retention." Id.
¶ 35. The court of appeals determined that the insurance policy in Brown County was ambiguous as to whether the self-insurance agreement with Wisconsin Municipal Mutual Insurance Company was "other insurance." Id., ¶ 10. It further concluded that the self-insured retention at issue operated more like a deductible than insurance coverage. Id., ¶ 16. Significantly, Brown County explained that the public policy relied on in Hillegass did not apply in a dispute between a self-insured party and its own insurer. Id., ¶ 18.
¶ 36. Brown County created a narrow exception to Hillegass when an "other insurance" clause is ambiguous, operates in exactly the same way as a deductible, and involves a dispute between a self-insured party and its own insurer. Menard contends that because it is a permissive user of Burgraff s vehicle, this case involves a dispute between a self-insured party and its own insurer. However, this case is distinguishable from Brown County.
¶ 37. Menard's self-insured retention operates differently than a deductible. Menard's policy with CNA states: "The S.I.R. [self-insured retention] shall be eroded by allocated claim costs including de *68 fense . . . Self-insured retentions are distinct from deductibles when the insured is obligated to retain its own defense counsel. See Anderson, Wisconsin Insurance Law, § 11.12. That is exactly the case here.
¶ 38. More importantly, this is not a dispute between an insured and its own insurer. In Brown County, the court explained that "when both a self-insured party and its insurer are liable for a loss, requiring the insurer to cover the loss does not allow the self-insured party to avoid both paying premiums and making payouts." Id., ¶ 25. The fact that the County purchased both policies led the Brown County Court to conclude that this "was not a windfall for the County; the County bargained for coverage in this situation." Id., ¶ 26.
¶ 39. In Brown County, both insurance policies were purchased by the County. AJthough Menard may benefit from coverage as a permissive user, that does not place Menard in the same shoes as the insured in Brown County. Menard's argument is unpersuasive because it ignores the fact that it did not bargain or pay for the $100,000 in liability coverage available under the Millers First policy.
¶ 40. Unlike in Brown County, this argument would result in a windfall for Menard because it could both avoid paying premiums and making payments under its self-insured retention. Here, as in Hillegass, it would be "fundamentally unfair and contrary to legislative intent" to permit companies such as Me-nard to self-insure and thereby escape the expense of premium payments as well as the possibility of being held liable as a primary insurer. 176 Wis. 2d at 83.
¶ 41. Brown County did not analyze the self-insured retention in terms of how it shifted risk in exchange for payment of premiums. The County ar *69 gued that " 'insurance' could refer only to agreements where third parties agreed to insure the County against risk, not agreements whereby the County agreed to pay its losses itself." Brown County, 300 Wis. 2d 547, ¶ 14. Agreeing with the County, the court of appeals explained that "the only question that matters is who is liable: the County or someone else." Id., ¶ 15.
¶ 42. If the court of appeals in Brown County had analyzed whether the County's self-insured retention shifted risk in exchange for premiums, the court would still have concluded that the County's self-insured retention was not "other insurance" in that case. As Hillegass explained, Burlington "chose to retain its own risk for the first $1 million rather than pay premiums to a third-party insurer." 176 Wis. 2d at 82. In contrast, the County chose to avoid that risk by purchasing a second primary insurance policy without a deductible. Thus, the Hillegass risk analysis still allows for an exception to the general rule in cases where a self-insured party chooses to purchase additional liability insurance without a deductible or self-insured retention.
¶ 43. In sum, we agree with both the circuit court and the court of appeals that Hillegass, and not Brown County, controls the outcome of this case. Accordingly, we conclude that Menard's self-insured retention is "other applicable liability insurance" under the Millers First policy's "other insurance clause."
IV.
¶ 44. We address next the issue raised in Millers First's petition for review. It contends that the court of *70 appeals erred when it concluded that Millers First breached its duty to defend Menards.
¶ 45. Millers First's duty to defend stems from Menard's status as a permissive user of the plaintiffs vehicle. In Biasing, this Court concluded that a Me-nard employee was a permissive user under a customer's automobile insurance policy. 356 Wis. 2d 63, ¶ 41. Biasing also determined that the automobile insurer has a duty to defend and indemnify a permissive user. Id., ¶ 42-44. However, Biasing did not address the issues we now face.
¶ 46. In addressing its duty to defend, Millers First's policy states that Millers First "will settle or defend, as we consider appropriate, any claim or suit asking for [covered] damages." It further states: "Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We are not obligated to provide defense after we have paid our limits of liability in settlement of claims or suits."
¶ 47. The declaration page of Millers First's policy provides a limit of liability of $100,000: "DESCRIPTION OF COVERED VEHICLES, LIMITS OF LIABILITY AND PREMIUMS CHARGED. COVERAGE IS PROVIDED WHERE A PREMIUM AND LIMIT OF LIABIITY IS SHOWN." The "PER PERSON LIMIT [FOR] BODILY INJURY" is "100,000." It also sets forth the premium paid for this coverage.
¶ 48. Nevertheless, Millers First contends that its limits of liability should be $40,000, rather than the $100,000 set forth in its declaration page. Referring to the terms of its policy, Millers First argues that it was required to provide a defense only until its "limit of *71 liability for this coverage has been exhausted."[6] Millers First contends that its liability "for this coverage" was exhausted by its $40,000 payment of its proportionate share of Burgraff s claim. Additionally, Millers First advances that because Menard is a permissive user, it would be a windfall for Menard if Millers First is obligated to defend Menard after Millers First settled its obligation with the plaintiff.
¶ 49. The general rule regarding an insurer's duty to defend until its policy limits are exhausted is set forth in St. John's Home of Milwaukee v. Continental Cas. Co., 147 Wis. 2d 764, 434 N.W.2d 112 (Ct. App. 1988). In St. John's, Aetna Casualty Insurance Company ("Aetna") and American National Fire Insurance Company ("American"), moved for partial summary judgment to limit the scope of St. John's covered damages. 147 Wis. 2d at 769. The circuit court determined that the maximum amount of claimed damages for which there was coverage under the Aetna and American insurance policies was $11,400. Id. at 778-79. American deposited $11,400 with the circuit court as tender to St. John's to cover the insurers' maximum potential liability for the claims. Id. at 779. According to the circuit court, Aetna and American had no duty to defend after the $11,400 was tendered as payment of the insurers' maximum potential liability. Id. at 779.
¶ 50. Reversing the circuit court's ruling, the court of appeals explained that the circuit court was "incorrect in holding that if the insurers paid the sum of $11,400, they owed no duty to defend." Id. at 787. St. *72 John's explicitly held that "maximum potential liability" cannot be equated with "maximum policy limits." Id. The St. John's court explained that" [i]f an insurer owes any money at all under its insurance policy, it must defend, because Wisconsin is one of those states which requires an insurer to exhaust its total policy limits before it is freed from the duty to defend." Id. Thus, even though Aetna and American tendered payment of their maximum potential liability of $11,400, they continued to have a duty to defend because they had not paid their full policy limits.
¶ 51. Here, as in St. John's, Millers First's $40,000 payment to the plaintiffs was less than its $100,000 policy limits. Although Millers First's $40,000 payment may represent its maximum potential liability for Burgraff s claim, the policy language does not limit the duty to defend based on maximum potential liability. Thus, under St. John's, Millers First has a duty to defend Menard until it pays its full $100,000 policy limits.
¶ 52. Any alteration in an insured's duty to defend must be explicitly stated in the policy. "Because any limitation on the insurer's duty to defend is in the nature of an exclusion, the defense coverage clause must clearly express the limitation." Gross v. Lloyds of London Ins. Co., 121 Wis. 2d 78, 88, 358 N.W.2d 266 (1984). There is no clause in Millers First's policy that alters its duty to defend if it shares responsibility for providing primary liability coverage with another insurer.
¶ 53. Although the Millers First policy was in effect before Biasing and thus did not contemplate Menard as a permissive user, the relationship between two primary insurers is not new or unique. Millers *73 First included an "other insurance" clause in its policy which set forth the responsibilities of two primary insurers with respect liability coverage. The "other insurance" clause was applied by the circuit court and the parties' responsibilities were pro-rated according to terms of the policy.
¶ 54. Millers First's policy specifically provides for a pro-rata share of liability payments, but does not contain a similar pro-rata clause for defense costs. Certainly Millers First could have included a similar clause with respect to concurrent insurers' duty to defend, but did not write its policy to include a prorated duty to defend. It is now asking us to read such a clause into the policy. We decline to do so here. We will not re-write Millers Firsts' policy language.
¶ 55. Instead, we will follow the well-established rules of insurance contract interpretation. Insurance policies are interpreted as they would be by a reasonable person in the position of the insured. State Farm, 251 Wis. 2d 561, ¶ 28. " [B]ecause the insurer is in a position to write its insurance contracts with the exact language it chooses-so long as the language conforms to statutory and administrative law — ambiguity in that language is construed in favor of an insured seeking coverage." Froedtert, 317 Wis. 2d 54, ¶ 43. This court will not now create an exclusion with respect to Millers First's duty to defend that it did not write into its own policy.
¶ 56. We also reject Millers First argument that Teigen and Loy stand for the proposition that Millers First can settle for less than its limits of liability and be released from its duty to defend. In Teigen v. Jelco of Wis. Inc., an insurer was relieved of its duty to defend after it used a Loy release to settle with the plaintiffs. *74 124 Wis. 2d 1, 367 N.W.2d 806 (1985). A Loy release allows the plaintiff to settle for less than the primary insurer's policy limits by giving the secondary or excess insurance carrier credit for the full amount of the policy limits. Loy v. Bunderson, 107 Wis. 2d 400, 417, 320 N.W.2d 175 (1982). The parties, however, did not enter into a Loy Release here. They instead settled for a proportionate amount of the verdict without giving credit up to the policy limits.
¶ 57. We agree with the court of appeals that the only reasonable interpretation of the term "limit of liability" is the $100,000 limit of liability listed on the insurance policy's declarations page. Under the unambiguous policy language, Millers First was required to provide a defense for Menard until it paid its $100,000 limit of liability. Like the court of appeals, we determine that Millers First breached its duty to defend when it withdrew its defense of Menard following the settlement.
V.
¶ 58. Having concluded that Menard's self-insured retention is "other applicable liability insurance" and that Millers First breached its duty to defend Menard, this case is remanded to the circuit court. Upon remand, the circuit court must make a determination of damages. We discuss next the nature of available damages to provide guidance to the circuit court.[7]
*75 ¶ 59. Menard relies on Newhouse by Skow v. Citizens Sec. Mut. Ins. Co. for the proposition that Millers First must pay damages including: (1) the amount of the judgment or settlement plus interest; (2) costs and attorney fees incurred by the insured in defending the suit; and (3) any additional costs that the insured can show naturally resulted from the breach. 176 Wis. 2d 824, 838, 501 N.W.2d 1 (1993). It reads Newhouse too broadly. Just as the damages awarded in Newhouse were based on the facts of that case, the damages here depend on the unique facts of this case. The test, however, remains the same.
¶ 60. Newhouse sets forth the test as follows: "The insurance company must pay damages necessary to put the insured in the same position he would have been in had the insurance company fulfilled the insurance contract." Id. at 838. "[A] party aggrieved by an insurer's breach of its duty to defend is entitled to recover all damages naturally flowing from the breach." Id. at 830.
¶ 61. In Newhouse, neither the insurer nor its insured participated in the trial. Id. at 832. During the course of the trial, each of the other defendants settled separately with the plaintiffs. Id. Judgment was entered against the insured in the amount of $588,003.70, which was in excess of the $50,000 policy limits. Id. The Newhouse court concluded that "an excess judgment is properly included in the damages *76 for breach of an insurer's duty to defend, if the excess judgment was a natural or proximate result of the breach." Id. at 838.
f 62. As the Seventh Circuit explained in Hamlin Inc. v. Hartford Accident and Indem. Co., 86 F.3d 93, 95 (7th Cir. 1996), Newhouse "is explicit that the insured must show that he was made worse off by the breach than he would have been had the breach not occurred." The Hamlin court considered whether the defendant had as good of a defense as he would have had if the insurer provided counsel. Id. at 95. It observed that, " [t]his insurer did not pay the entire bill for Hamlin's defense. But neither is Hamlin some hapless individual who could not afford a good defense unless his insurer or insurers picked up the full tab." Id. In this case, Menard is analogous to the defendant in Hamlin, not the insured in Newhouse.
¶ 63. The court in Hamlin was concerned about a windfall. It explained that to award the entire $2.6 million verdict to Hamlin would result in a windfall, which would be punitive in nature to the insurer. Id. Punitive damages are not awarded unless an insurance company acts in bad faith. Id. (citing Weiss v. United Fire & Casualty Co., 197 Wis. 2d 365, 397, 541 N.W.2d 753 (1995)). Here there is no allegation that Millers First acted in bad faith when it withdrew its defense of Menard. Likewise, it would be a windfall for Menard if Millers First were ordered to pay the entire verdict in this case.
¶ 64. Just as in Hamlin, Menard cannot demonstrate that the amount of the jury verdict was a result of the breach. Menard chose its own counsel and there is no assertion that it would have achieved a better result at trial had Millers First chosen Menard's coun *77 sel. See 86 F.3d at 95. Unlike the excess judgment against the defendant in Newhouse, the jury verdict against Menard was for less than the policy limits. Thus, Menard is not entitled to damages in the amount of the jury verdict because the verdict amount does not flow naturally from the breach.
¶ 65. Menard relies on Radke v. Fireman's Fund Ins. Co., for the proposition that Wisconsin courts have not adopted Hamlin's analysis. 217 Wis. 2d 39, 48, 577 N.W.2d 366 (Ct. App. 1998). However, the Radke court simply distinguished Hamlin on the grounds that Hamlin involved multiple insurers. Id. at 48. According to Radke, " [t]he key difference to the Hamlin court was that Hamlin involved multiple insurers, one which accepted the tender of defense and paid for a portion of Hamlin's legal defense bill." Id. at 48. The fact that Hamlin had multiple insurers, one of which accepted the tender of defense and paid for a portion of the legal bill, relates to the issue of whether the insured was worse off after the breach. It is from this standpoint that we analyze the present case.
¶ 66. The facts in Radke are also distinguishable from the present case. The insurer denied coverage and refused to defend Radke. Id. at 42. Radke settled with the plaintiff and filed suit against the insurer seeking reimbursement of attorney fees and his settlement payment. Id. The issue in Radke was whether the insurer could raise its coverage defenses after it breached its duty to defend. The court held that because the insurer had breached its duty to defend, "it may not now challenge or otherwise litigate the coverage issues." Id. at 49. It concluded that the insurer "is liable to Radke for the costs of defending the suit, the *78 amount recovered from Radke by settlement and any additional damages caused by Fireman's Fund's breach of its contract." Id.
¶ 67. Unlike in Radke, Millers First accepted Menard's tender of defense.[8] Millers First defended Menard until it settled its proportionate share of the claim. Due to its self-insured retention, Menard had responsibility for five-sixths of the verdict. The plaintiffs in Radke and Newhouse would not have been responsible for the verdict except for the insurers' refusal to indemnify and defend. In contrast, Menard would have had responsibility for the verdict regardless of whether Millers First breached its duty to defend. Here, Menard has concurrent liability because of its $500,000 self-insured retention.
¶ 68. In order to satisfy its duty to defend, Millers First had various options including: (1) pay its $100,000 limit of liability and be relieved of its duty to defend; (2) settle with the plaintiffs for its proportionate share of the claim and use a Loy release to give Menard credit for the full amount of the $100,000 policy limits; or (3) settle with the plaintiff for its proportionate share of the claim and continue to defend Menard. Instead, Millers First settled with the plaintiff for its proportionate share of the claim, but withdrew defense of Menard following settlement.
¶ 69. To put Menard in the position it would have been in prior to the breach, Millers First must pay damages to Menard in the amount of costs and attorney fees. Menard is not claiming attorney fees and *79 costs incurred prior to the breach of the duty to defend. Millers First suggests that defense costs should be pro-rated between it and Menard. Had Millers First put a pro-rated clause in its policy for defense costs as it did for its liability for loss, then defense costs could be pro-rated. However, for the reasons stated above, we decline now to rewrite its policy. See majority op., ¶¶ 55-56.
¶ 70. Although the dissent asserts that we ought to apply equitable contribution under the facts in this case, we find little support for this approach under Wisconsin law. In Plastics Eng'g Co. v. Liberty Mut. Ins. Co., we expressly determined that we would not pro rate liability among insurers when the policy language did not provide for it. See 2009 WI 13, ¶¶ 51-60, 315 Wis. 2d 556, 759 N.W.2d 613. The majority opinion in Plastics Eng'g Co., authored by Justice Ziegler, explained: "In our analysis, we are again driven by the policy language. Liberty Mutual's policy contains no language that limits its obligation to a pro rata share." Id., ¶ 55. "Thus, to insert the pro rata language, we would have to rewrite the insurance policy." Id., ¶ 59.
¶ 71. In asserting that equitable contribution of attorney fees should be applied here, the dissent leaps over a necessary threshold determination. It fails to address whether an insurer that breached its duty to defend should be entitled to equitable contribution of attorney fees.
1 72. The Wisconsin court of appeals previously has refused to apply equitable contribution when there has been a breach of the duty to defend. See Se. Wis. Prof'l Baseball Park Dist. v. Mitsubishi Heavy Indus. Am., Inc., 2007 WI App 185, ¶ 64, 304 Wis. 2d 637, 738 N.W.2d 87. Although the dispute in Mitsubishi in *80 volved a primary and excess carrier, the policy that a primary insurer should not be rewarded for a refusal to honor its duty to defend applies here as well:
We perceive no good policy reason to reward Travelers . . . for its repeated refusal to defend — even after being repeatedly told it had a contractual duty to do so — by reducing the amount the trial court has determined it owed. Such a reduction would reward a primary carrier for a wrongful refusal to defend and create something akin to a litigation expense game of "chicken" — -with offsets going to the obligated primary insurer who breached its duty.
Id., ¶ 64. The Mitsubishi court further explained: "We decline Travelers' invitation to thrust the trial court into this new, and in this case unnecessary, sea of litigation." Id.
¶ 73. In other jurisdictions as well, a breach of a duty to defend precludes application of equitable contribution. For example, the dissent relies on Cargill Inc. v. Ace Am. Ins. Co., 784 N.W.2d 341, 354 (Minn. 2010), which states that a "breach of a duty to defend precludes application of an equitable right to contribution." See also Nat'l Indem. Co. v. St. Paul Ins. Companies, 724 P.2d 544, 545 (Ariz. 1986) ("When an insurer has a duty to defend the insured, there should be no reward to the insurer for breaching that duty .... Under the principle of equitable subrogation, the insurer which has performed the duty to provide a defense to its insured should be able to compel contribution for a share of the cost of defense from another insurer . . . .").
¶ 74. Likewise, in Cont'l W. Ins. Co. v. Colony Ins. Co., 69 F. Supp. 3d 1075, 1086 (D. Colo. 2014), which the dissent also cites, the court found that "a participating insurer is entitled to equitable contribu *81 tion from a non-participating insurer, both having a duty to defend, when the former provides a complete defense to an insured against a common risk. . . (emphasis added). Here, Millers First did not provide a complete defense because it withdrew its defense after settlement with the plaintiffs in breach of its obligation to provide a defense until its limits of liability were exhausted.
¶ 75. The dissent argues that Millers First's breach of its duty to defend should not preclude equitable contribution. It relies on an Arizona court of appeals decision, Nucor Corp. v. Emp'rs Ins. Co. of Wausau, 296 P.3d 74 (Ariz. Ct. App. 2012), that is readily distinguishable.
¶ 76. Nucor involved a class action lawsuit in which every insurer breached its duty to defend. As the Nucor court explained, equitable contribution was allowed because all the insurers breached their duty to defend:
Nucor's argument also fails to acknowledge that all of its insurers refused to defend Nucor at some time. All refused to defend Nucor in the ADEQ proceeding, not just Wausau. Hartford had to be sued twice by Nucor for bad faith before it acknowledged coverage. Travelers did not defend Nucor in the class action litigation until Nucor sued it for bad faith.
Id., ¶ 44. That is not the case here. Only Millers First breached its duty to defend. There is no allegation that Menard failed in its duty to defend. It was Menard, not Millers First, that shouldered the cost of litigation after Millers First settled with Burgraff.
¶ 77. Millers First could have followed the procedure set forth under well-established Wisconsin law. *82 When coverage is disputed, an insurer should request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved. Newhouse, 176 Wis. 2d at 836; see also Elliot v. Donahue, 169 Wis. 2d 310, 318, 485 N.W.2d 403 (1992). Had it done so, Millers First would not have breached its duty to defend. Instead, Millers First relied on the circuit court's summary judgment order and withdrew its defense of Menard.
¶ 78. "An insurance company breaches its duty to defend if a liability trial goes forward during the time a no coverage determination is pending on appeal and the insurance company does not defend its insured at the liability trial." Newhouse, 176 Wis. 2d at 836. "When an insurer relies on a lower court ruling that it has no duty to defend, it takes the risk that the ruling will be reversed on appeal." Id.
¶ 79. In sum, we are in accord with the court of appeals' determination that Menard's self-insured retention is "other applicable liability insurance" under the Millers First policy's "other insurance clause." We also agree with the court of appeals conclusion that Millers First breached its duty to defend when it withdrew its defense of Menard following the settlement.
¶ 80. Accordingly, we affirm the court of appeals and remand to the circuit court for a determination of the amount of costs and attorney fees Menard incurred after Millers First breached its duty to defend.
By the Court. - The decision of the court of appeals is affirmed and the cause is remanded to the circuit court for a determination of damages.
¶ 81. MICHAEL J. GABLEMAN and REBECCA G. BRADLEY, J.J., did not participate.

 Burgraff v. Menard, Inc., 2014 WI App 85, 356 Wis. 2d 282, 853 N.W.2d 574 (affirming and reversing orders of summary judgment entered by the circuit court for Eau Claire County, Michael A. Schumacher, J., presiding).

 Apparently the parties agreed that Burgraffs damages would not exceed $600,000. The jury ultimately awarded the plaintiffs damages in the amount of $345,396.07, which was further reduced due to the jury's finding of contributory negligence.

 The circuit court's decision on Menard's motion to bifurcate and stay was affirmed by the court of appeals. That issue is not before us.

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 Like the court of appeals, we decline to apply the "other insurance" clause from the CNA policy. See Burgraff v. Menard, Inc., 2014 WI App 85, ¶¶ 15-17, 356 Wis. 2d 282, 853 N.W.2d 574. We agree that the CNA policy's "other insurance" clause does not apply to Menard's self-insured retention because it only applies to CNA's obligations once the self-insured retention is exhausted. See id.

 Millers First agreed to defend Menard subject to a reservation of rights, but later conceded that it had a duty to defend, agreeing that Menard was entitled to coverage under Burgraff s automobile policy.

 After oral argument, we ordered, the parties to file letter briefs addressing the following issues: (1) What type of damages can be claimed if Millers First is found to have breached its duty to defend?; and (2) Are the damages available affected *75 by the fact that Millers First defended until the circuit court approved Millers First's settlement with the plaintiff?

 During oral argument, Millers First twice stated that it was not challenging its initial duty to defend, explaining "we have not appealed that issue" and "we at the circuit court level did accept coverage."

 Id., ¶ 5.